KARL SCHACK AND EDNA C. SCHACK, PLAINTIFFS-AP-
PELLANTS, v. ROBERT P. TRIMBLE, BUILDING IN-
SPECTOR OF THE BOROUGH OF DEAL, MONMOUTH
COUNTY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1957—Decided December 12, 1957.

46

48

Before Judges CLAPP, HALL and SCHETTINO.

*Mr. Morris Weinstein* argued the cause for plaintiffs-appellants (*Messrs. Anschelewitz & Barr,* attorneys; *Mr. Sidney J. Meistrich,* of counsel, *Mr. Bernard A. Kaminsky,* on the brief).

*Mr. William J. O'Hagan* argued the cause for defendant-respondent (*Messrs. Stout and O'Hagan,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. A. D. Appeal is from a prerogative writ judgment of the Superior Court, Law Division, Monmouth County, affirming the denial by defendant of an application made by plaintiffs for a permit to construct a dwelling house.

The basic issue requires an examination into certain sections of the zoning ordinance of the Borough of Deal in their application to two contiguous lots, separately numbered but title to both held at one and the same time by plaintiffs.

In 1944 the plaintiffs purchased Lot 11A with a one-family house and attached garage located at the northeast corner of Norwood and Parker Avenues in Deal. The house facing Parker Avenue was in violation of the zoning ordinance because the side and rear yards were insufficient.

We particularize the history of Lot 11B. In 1942 the municipality obtained title to it by virtue of a tax foreclosure decree. It is located on Norwood Avenue and immediately to the north of Lot 11A and is in the same zoning area and subject to the same zoning restrictions as Lot 11A. In 1945 this lot was put up for public sale by the borough, and was competitively bid for and sold to plaintiffs with no condition or restriction.

In 1947 plaintiffs converted the attached garage to a playroom. In 1948 plaintiffs obtained a building permit for and built a garage on Lot 11B for their use while living in the dwelling house located on Lot 11A. The garage was so located on Lot 11B that it could be used in the future as an accessory to a dwelling on Lot 11B, and admittedly it did and does not violate any requirement of the municipality as far as location with reference to lot boundary lines is concerned. In January 1955 plaintiffs contracted to sell their home on Lot 11A and to lease to the purchaser one-half of the garage on Lot 11B for a period of 99 years. Title was scheduled to close in early May 1955. In March 1955 plaintiffs applied to defendant for a building permit to erect a dwelling house on Lot 11B which they still owned, and the application was denied. Plaintiffs claim and the trial court found that it was then that they first knew of the violations existing on Lot 11A and that the Borough of Deal considered Lots 11A and 11B as one.

Plaintiffs did not appeal to the board of adjustment from the denial of the permit under *N. J. S. A.* 40:55-39(*a*) but instead applied to the board for a variance, apparently under *N. J. S. A.* 40:55-39(*d*), on the theory, which they must have then entertained, that they were not entitled to a permit as a matter of legal right and that a variance was required before it could issue. The board of adjustment recommended to the borough commissioners that a variance be granted, but on April 23, 1955 the commissioners disapproved on the grounds that plaintiffs' purchase of Lot 11B and subsequent construction of the garage thereon had cured the rear yard violation of Lot 11A; that plaintiffs' purchase of Lot 11B had caused a joinder of Lot 11A and Lot 11B; that plaintiffs could not thereafter treat Lot 11B as a separate lot, and that no dwelling house could therefore be built on Lot 11B.

On August 19, 1956 a second application for a building permit was made for a dwelling house different only in some minor particulars from the first. This application was also denied by defendant, and plaintiffs filed this action in lieu

of prerogative writ in the Superior Court without first seeking a variance.

█ We first take up defendant's argument that *R. R.* 4:88–15 bars the present action. The trial court agreed with this contention and we find such a holding to be erroneous.

██ The action of the board of commissioners which was not appealed from in 1955 was the denial of an application for a variance. However, the present action is not in lieu of *certiorari* to review the action of the board of adjustment and the board of commissioners in denying a variance. Rather, this action seeks relief in lieu of *mandamus* to compel as a matter of right the issuance of a building permit since such issuance is not committed to the discretion of the board of adjustment. In *Yanuzzi v. Mayor and Council of Borough of Spring Lake, 22 N. J.* 567, 570 (1956), the Supreme Court stated:

> "Indeed, the judgment for defendants proceeds on the hypothesis that the pleaded right of action was lost by the operation of the limitation clause of *R. R.* 4:88–15(a).
>
> But plaintiffs are seeking to enforce as landowners an asserted right to local services * * * a continuing right, if there be a right at all, enforceable by the constitutionally-secured proceeding in lieu of the prerogative writs; and the right is not lost by a failure of such judicial action within 30 days from the local authority's mere refusal to act. This is not a proceeding 'review' formal action by the governing body, but rather for 'relief' by way of the prerogative writ in the nature of *mandamus* to command performance of what is deemed to be an enforceable governmental duty. It is not within either the letter or spirit of the cited rule. The subsequent specific enumerations of the rule itself resolve all doubt on this score."

The *Yanuzzi* opinion was relied upon by the Supreme Court in an opinion written by Mr. Justice Weintraub in *Lettieri v. State Board of Medical Examiners,* 24 *N. J.* 199, 205–6 (1957), in holding that the plaintiff sought enforcement of a right to a license and the 30-day limitation period provided in *R. R.* 4:88–15(a) was not applicable. Likewise, if the plaintiffs here complied with the building requirements and their property is not restricted by the zoning

ordinance, they have a continuing right to a building permit, not subject to the discretionary powers of the local governing body as in the case of an application for a variance. The first application to the building inspector is not a bar to the later one now before us. The determinations of such an officer should not be accorded the attributes of a common law judgment or administrative *res adjudicata*. *Goddard v. County Board of Elections*, 27 *N. J. Super.* 30, 33 (*App. Div.* 1953).

Throughout the period since 1945 when plaintiffs had title to both Lots 11A and 11B, each lot was delineated separately on the official tax map of the borough; and was assessed separately for taxes and the plaintiffs were given a separate tax bill for each lot. When the plaintiffs conveyed Lot 11A, the borough continued to tax plaintiffs separately for Lot 11B. The borough made changes on its tax map as to lots contained in it, giving old lots a new lot designation, but it did not do anything concerning the status of Lot 11B and it remains a separately numbered lot today. It is conceded that the application for a building permit for a single-family dwelling contained proper plans and specifications and that the municipality itself conveyed Lot 11B to plaintiffs on the basis of competitive bidding without any deed restriction or condition and without any reference to joinder of Lots 11A and 11B.

It is apparent from the record that the municipality never took any action before the denial of the permit in 1955, which would indicate to plaintiffs that the two lots were joined and could not be separated. One of the plaintiffs, Mrs. Schack, testified that plaintiffs never intended to join the lots, and this testimony was not controverted. The builder of the garage, a disinterested party, testified to the same effect. However, the builder also testified that he put the address location of the garage as Parker Avenue in the application for a building permit because the Schacks' home faced Parker Avenue and they intended to use the garage. The trial court found that plaintiffs never knew about the zoning violation condition of the rear and side yards of

Lot 11A until they applied for the permit in 1955. The trial court also found that the zoning ordinance contemplates the erection of a private garage as an accessory use only in residential district No. 4 in which the property is located; that plaintiffs erected the two car garage on the rear of Lot 11B in 1948 as an accessory use to the dwelling house located on adjoining Lot 11A; that plaintiffs tied in the two lots together, both lots being in the common ownership of the plaintiffs; and in conclusion, that plaintiffs had no right to re-establish a violation of the zoning ordinance by the severance of title to Lot 11B from the title held to Lot 11A. In passing, we point out that defendant's witness testified that the side and rear yards of Lot 11A originally did not conform to the zoning ordinance and that the home on 11A still is in violation of the side yard requirement.

 It is true that every intendment is in favor of the judgment under review and we should only make our own finding if we are well satisfied that the trial court's finding is a mistaken one and offends the interest of justice. *N. J. Highway Authority v. J. & F. Holding Co.,* 40 *N. J. Super.* 309, 317 (*App. Div.* 1956). However, respect for the trial court's finding imposes no restraint on our power fully to analyze the proofs and reach a conclusion whether or not the finding is consistent with the evidence. *Gagliano v. Maggio,* 32 *N. J. Super.* 219, 225 (*App. Div.* 1954), certification denied 17 *N. J.* 57 (1954). The exercise of our permissive power is brought into play when "required to do justice in the particular case." *Midler v. Heinowitz,* 10 *N. J.* 123, 128 (1952).

 Although powers granted to a municipality are to be liberally construed by *Article* IV, § VII, *par.* 11 of the 1947 *New Jersey Constitution,* and although the municipalities' power to zone is well recognized as a very important granted one, *Fischer v. Township of Bedminster,* 11 *N. J.* 194 (1952), equally important is the protection of a citizen's property rights which are guaranteed by *Article* I, *pars.* 1 and 20 of the *New Jersey Constitution.* Although the proposition that zoning powers may limit the property rights

of a citizen is well established, *Article* IV, § VI, *par.* 2 of the *Constitution* and *N. J. S. A.* 40:55–30 state that the power to zone is to be exercised by the municipality through the passage of ordinances. But the ordinance must be explicit in its terms. In *Hrycenko v. Board of Adjustment of City of Elizabeth*, 27 *N. J. Super.* 376, 379 (*App. Div.* 1952). the court said that zoning limitations on the use of private property must be clearly and expressly imposed, and should not be inferred, citing 6 *McQuillin, Municipal Corporations* (3*d* ed. 1949), § 20.51, *p.* 126. The principle of strict construction has been held to apply to zoning ordinances. 8 *McQuillin, Municipal Corporations* (3*d* ed. 1957), § 25.72, *p.* 160. In *Jantausch v. Borough of Verona*, 41 *N. J. Super.* 89, 104 (*Law Div.* 1956), affirmed 24 *N. J.* 326 (1957), Judge Weintraub, although conceding that the greatest latitude should be accorded the legislative authority of the municipality, emphasized the point here applicable that:

"* * * the legislative power must be exercised by the municipality itself; it may not ask the courts to write a better or a different ordinance. And it should speak clearly, * * * especially in view of the predicament of the citizen who seeks in good faith to utilize his property. His right so to do should not depend upon the outcome of litigation after the event in which a provision, which he apparently fully meets, assumes a new and different significance by a process of refined interpretation. And this should be so without reference to the principle of strict construction which has been held to apply to zoning ordinances."

■ The zoning ordinance was adopted in 1923 and was continued in force and effect by *R. S.* 40:55–51. Perhaps its enactment during the first flush of the zoning era explains its ambiguities and lack of detail.

Section 2 of the zoning ordinance states in part:

"(a) Words used in the present tense include the future; the singular number includes the plural and the plural the singular; the word 'lot' includes the word 'plot'; * * *

(b) For the purpose of this ordinance, a 'lot' is any parcel of ground under one ownership, description of which is filed with the Building Inspector, or as hereinafter provided, and which is occupied by only one building and its accessories."

The ordinance definitions of "lot" cannot be applied to the facts of this case. With reference to Lot 11A and Lot 11B no description of a parcel of ground under one ownership by plaintiffs was ever filed with the building inspector. Thus, this requirement of the definition is lacking. In no place in the ordinance is there a section referring back to the words of this section "or as hereinafter provided." There can be no compliance with a non-existing provision.

If we seek assistance for a definition of "lot" from other authorities, we come to the conclusion that each definition depends upon the special circumstances of the case. In *Potter v. City of Orange*, 62 *N. J. L.* 192, 195 (*Sup. Ct.* 1898) we find that:

"What is a lot * * * is a question of fact to be determined * * * by all the circumstances of the case. * * * The test, therefore, is to be gathered from the intention of the landowner, as evinced by his acts, and not from the theories of the public authorities. On the other hand, we should not rule that the absence of a boundary fence or other physical division will show conclusively that a tract of land must be considered as one lot for the purpose of taxation, or that even a homogeneous use will enforce that consideration. Each case must be judged by its circumstances."

In *Edwards v. Derrickson*, 28 *N. J. L.* 39, 45 (*Sup. Ct.* 1859), the court stated:

"The word lot is, perhaps, still more indefinite in its dimensions. Its proper meaning, when applied to real estate, is a portion of land that has been set off or allotted, whether great or small, but in common use it means simply a piece, parcel, or tract of land, without regard to size. It does not necessarily connect itself with buildings, but may be anywhere on the earth's surface. It may be a small thing or a large one; it may be a town lot, a wood lot, or a mill lot; it may contain one acre, two acres, fifty acres, and who shall say that, as a matter of law, a lot of land shall not or cannot contain one hundred acres or more? Here, too, the question is not so much the size of the lot or parcel of land, as whether it is one single parcel lying together, known as one tract, bought and sold as such, its metes and bounds generally known, and as being the tract, lot, or parcel of land which the parties naturally understood as those which would appertain to or be connected with the building or buildings after they should be erected."

This case was affirmed under the title of *Derrickson v. Edwards*, 29 *N. J. L.* 468 (*E. & A.* 1861), and cited with

approval in *Burmore Co. v. Champion*, 124 *N. J. L.* 548, 549 (*E. & A.* 1940), a case involving a zoning ordinance. See also other authorities cited in *Marlin v. Cestone*, 33 *N. J. Super.* 267, 271 (*App. Div.* 1954).

We find, for example, in other states that the ordinary accepted meaning of the word "lot," when applied to property within a corporate city or town, is not synonymous with the words "tract" or "parcel" but is used in the sense of a city lot as bounded and described on the recorded plats of the city. *Pilz v. Killingsworth*, 20 *Or.* 432, 26 *P.* 305, 306 (*Sup. Ct.* 1891). Or "lot" denotes a single piece or parcel of land lying in a solid body and separated from contiguous lands by such subdivisions as are usual to denote different tracts of land as in the subdivision of a tract of land into city lots. *North & South Lumber Co. v. Hegiver*, 1 *Kan. App.* 623, 42 *P.* 388 (*Ct. App.* 1895). Other and conflicting authorities are noted under the title "Lot" in 25 *Words and Phrases, page* 659 *et seq.* A reading of these authorities points up the necessity for an explicit definition of the word "lot" in order to avoid ambiguity of meaning and scope.

We cannot, therefore, agree with respondent's contention that appellants' ownership of Lot 11A and Lot 11B as a result of the 1945 purchase of Lot 11B brought about a joinder of the two parcels within the limited definition of this section. *Hrycenko v. Board of Adjustment of City of Elizabeth*, 27 *N. J. Super.* 376 (*App. Div.* 1952).

The remaining pertinent provisions of the zoning ordinance are as follows:

"Section 6—Rear Yards and Side Yards.

(a) In all districts a rear yard is required. Its depth at the ground story level shall not be less than 20 per cent of the depth of the lot, except that it need not exceed fifty feet in any case.

One story or two story detached structures for permitted accessory uses, including permitted garages, may occupy not over 35 per cent of the required yard area, provided that any such structure is not over 30 feet in height above the adjacent finished grade, and provided that it is everywhere distant at least three feet from each side and rear lot line.

\* \* \* \* \* \* \* \*

Section 9—Districts (2) to (7) incl. and 9: Use Provisions

Within the Residence Districts Nos. 2, 3, 3A, 4, 5, 6, 7, and 9 no building or premises shall be used for other than one of the following purposes:

(a) A Dwelling for one family or for one housekeeping unit.

(b) Farms, Nurseries or Greenhouses, not operated for profit provided there is no display of products, other than in growth.

\* \* \* \* \* \* \* \*

Section 13—Garages.

In all Residence Districts a private garage in which no business, service or industry, connected directly or indirectly with motor vehicles is carried on, is permitted. No such garage shall provide storage for more than one motor vehicle for each 2500 square feet or lot area, nor for more than five motor vehicles, in any case, one of which may be a commercial vehicle of not more than 1½ tons weight in capacity.

No part of a garage shall be within three feet of any side or rear lot line or within 25 feet of any street line, excepting in District No. 8, where lots are only twenty-five feet front, a garage is permitted on the rear of a corner lot, but it shall not be nearer than three feet to rear or side lot lines."

The respondent contends that under this ordinance a garage cannot be erected on a lot in a residence district except as an accessory to a one-family dwelling. Section 6 of the ordinance refers to garages in relation to the percentage of a lot's area which may be covered by structures. Section 9, the use provision, under (a), refers to "A dwelling for one family or for one housekeeping unit"; but no reference is therein made to a garage as an accessory on the "same" lot. *Cf. Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200 (1949); *Peterson v. Board of Adjustment of the Town of Montclair,* 7 *N. J. Super.* 282 (*App. Div.* 1950). Section 13 permits a private garage to be located within all residence districts. The limitations recited therein do not encompass the restriction that a garage must be built on the same lot as a dwelling house.

Taking the most liberal view on behalf of respondent, it at best emphasizes the ambiguity of the zoning ordinance. Even though the erection of the garage on Lot 11B may have been a violation of the zoning ordinance, nevertheless it does not of itself establish an intention on the plaintiffs' part to make Lot 11B an integral part of Lot 11A; nor

are the terms of the ordinance such as to give rise *ipso facto* to that result under the circumstances presented here.

Moreover, plaintiffs were entitled to seek judicial relief directly and without the necessity of first appealing to the board of adjustment. *Honigfeld v. Byrnes,* 14 *N. J.* 600 (1954).

Plaintiff-owners of Lot 11B are entitled to a building permit on the basis of their application.

Judgment will be entered accordingly.