[Civ. No. 25323.   Second Dist., Div. One.   Sept. 18, 1961.]

VERNON McDONALD et al., Appellants, v.
CITY OF PASADENA, Respondent.

Potter and Creim and Marjorie R. Creim for Appellants.

Wendell R. Thompson, City Attorney, Fred R. Metheny, Assistant City Attorney, and William L. Mock, Deputy City Attorney, for Respondent.

WOOD, P. J.—The zoning committee of defendant city denied plaintiffs' application for a variance of a zoning ordinance. The board of directors of the city affirmed the decision of the committee. In this action for declaratory relief, with respect to the decision of the board, the plaintiffs appeal from a judgment of the superior court sustaining that decision.

Appellants (plaintiffs) contend that the decision of the board was arbitrary and discriminatory.

Joseph Zirwes is the owner of a portion of Lot 12 of Tract 8069, in Pasadena, which lot is in Zone R-1. He agreed to sell said portion of the lot to plaintiffs, Mr. and Mrs. McDonald; and an escrow regarding the transaction is pending. A provision of the escrow instructions is to the effect that the sale is contingent upon the zoning variance being obtained. It may be stated generally that under the zoning classification of R-1 no dwelling shall be erected on a lot having an area less than 12,000 square feet and a frontage less than 75 feet. Lot 12, as a whole, has an area of 21,198 square feet.

In 1957, Mr. Zirwes applied for a variance of the zoning ordinance in order that he might build two houses on the lot. (Since the lot contained 21,198 square feet it was not

large enough to be divided into two areas of at least 12,000 square feet each.) The application was denied, and thereafter he built a house on the southerly portion of the lot. In 1958, he sold the southerly portion of the lot (except the southerly 5½ feet thereof), which sold portion consisted of approximately 9,350 square feet. The remaining or northerly portion of the lot consisted of approximately 11,297 square feet. After he sold the southerly portion of the lot, he applied for a variance of the zoning ordinance in order that he might build a house on the northerly portion of the lot. The application was denied. Thereafter he agreed to sell the northerly portion of the lot to plaintiffs.

The application for a variance, involved herein, pertained to the said northerly portion, which as above shown consisted of less than 12,000 square feet. It is also to be noted that the frontage of said northerly portion was 72.5 feet, which was less than the 75-foot frontage requirement in the zoning ordinance. It is noted also that even though Mr. Zirwes sold a portion of the lot and thereby purported to divide Lot 12 into two lots, the lot, according to the recorded map and the zoning regulations, remained one lot.

It thus appears that the present application is for a variance whereby the McDonalds (who are prospective purchasers from Zirwes) will have permission to build a dwelling house on said northerly portion of Lot 12—the area and width of which are less than the standard requirement under the ordinance.

In 1954, defendant city adopted a general zoning ordinance (Ordinance No. 4322). As above stated, said Tract 8069 is in Zone R-1.

Section 3.01 of the ordinance provides that in Zone R-1 no building shall be used for any purpose other than a one-family dwelling, and that no dwelling shall be erected on any lot having an area less than 12,000 square feet and a width less than 75 feet on the front building line. That section also provides that the lot area requirements shall not apply to a lot shown as a separate lot on the map of record of the subdivision of the tract in which the lot is situated.

Section 4.09 of the ordinance provides, in part, that except as otherwise thereinafter provided, no building permit shall be issued by the superintendent of building for any building to be located in Zone R-1 upon a portion of a recorded lot.

Section 4.09 also provides, in part, that the superintendent of building may issue a building permit if a portion of a

recorded lot has a width at the front building line and an area not less than the average width and area of the adjoining lots, and if it has a frontage of not less than 50 feet on a dedicated public street, and if it is in keeping with the general character of the development of the neighborhood.

Subdivision (C) of section 4.09 of the ordinance provides, in part: "The Zoning Committee may in the manner provided in this code for granting an exception authorize the Superintendent of Building to issue a building permit for a building to be built upon a portion of a recorded lot or unsubdivided land."

Subdivision (D) of said section 4.09 provides, in part: "Before taking action upon such application, the Zoning Committee shall take into consideration the character of the improvements to be placed on the lot, the general effect upon the neighborhood and on the property or improvements of other owners of property in the neighborhood."

Section 1.05 of the ordinance provides, as follows: "No lot or parcel of land shall be separated in ownership or reduced in size below the minimum lot width or lot area required by this code nor shall any lot or parcel of land which has a width or area less than that required by this code be further reduced in any manner without the approval of the Zoning Committee obtained in the manner provided in this code for granting an exception to build on a portion of a lot."

As above indicated, the application of appellants is for: (1) a variance of the zoning ordinance with respect to area *and* frontage (of the remaining portion of the lot); and (2) a variance or exception with respect to building on the remaining portion of the lot.

Appellants contend that the decision of the board of directors of the city was arbitrary and discriminatory. They argue that the decision resulted in a denial of equal protection of the laws, and in a taking of their property without due process of law, for the following reasons: that zoning variances have been granted to the owners of other lots in Tract 8069; that 67.2 per cent of the lots in the vicinity are exempt from the area restriction or the frontage restriction set forth in the ordinance; and that unless a variance is granted plaintiffs cannot use the property for any lawful purpose.

In *County of San Diego* v. *McClurken,* 37 Cal.2d 683, it was said at page 691 [234 P.2d 972] : "The fact that vari-

ances may have been granted to some owners and denied to others . . . does not establish unreasonable discrimination.

The granting or denial of variances rests largely in the discretion of the body designated by the zoning ordinance for that purpose, and a denial of a variance will not be disturbed in the absence of a clear showing of abuse of discretion.''

In the present case, as above shown, Mr. Zirwes is the owner of the portion of the lot involved here, and he has agreed to sell that portion to plaintiffs, and they have agreed to buy it, upon the condition that their application for a variance is granted. It is thus apparent that Mr. Zirwes is a real party in interest. The zoning committee and the board of directors were entitled, of course, to consider the former applications for a variance and to consider the conduct of Mr. Zirwes with respect to the lot or portions thereof after his applications for a variance had been denied. After his first application (for right to build two houses on the lot) had been denied, he built a house on the lot and sold the portion of the lot upon which the house was located—which portion contained less than the required 12,000 square feet. After he had sold that portion, he applied for a variance with respect to the remaining portion—which portion contained less than the required area, and less than the required frontage. After that (second) application had been denied, he agreed to sell the remaining portion to the plaintiffs who, while their said contingent escrow agreement is pending, have applied for the same variance which was disallowed under Zirwes' second application. Under such circumstances the zoning committee and the board could have concluded that Zirwes was attempting to accomplish indirectly (through the application of plaintiffs) what he had not accomplished directly (through his applications). The committee and the board could have concluded also that any hardship now existing with respect to the use of said remaining portion was due to the act of Zirwes (after denial of first application) in causing the lot to be ''separated in ownership,'' i.e., selling the portion on which he had built a house. They could have concluded that said act was in contravention of section 1.05 of the ordinance, which provides that no lot shall be separated in ownership or reduced in size below the minimum area requirement. In *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332 [175 P.2d 542], plaintiff sought declaratory relief, claiming that a zoning ordinance was unreasonable

and invalid as applied to a portion of his property. In that case the plaintiff, after obtaining permits for single-family dwellings, constructed multiple dwellings. In reversing a judgment in favor of plaintiff therein, the court said, at page 342: "The constitutionality of the ordinance or of its application to particular property must be determined upon the basis of the facts and conditions as they existed prior to the time plaintiff proceeded in disregard of the ordinance, and the court must wholly ignore all conditions which resulted from the plaintiff's actions. If this were not so, then any landowner . . . by devoting his land to unrestricted uses, and by creating a situation in which enforcement would result in hardship to him, . . . could obtain a judgment that the ordinance is unconstitutional as applied to the *then existing* circumstances as changed by his actions."

The effect of granting the variance requested by plaintiffs would be to permit Zirwes to accomplish indirectly what he had not accomplished directly, and would be to approve his acts in separating the ownership of the lot in contravention of the ordinance.

With respect to appellants' argument regarding zoning variances granted to owners of other lots in Tract 8069, it appears that the tract consists of 20 lots and there were variances as to portions of 3 lots. The areas of such portions, as to which variances were granted, were less than the required area, but the frontages of such portions were in excess of the required frontage. In the present case the portion of the lot involved here is less in area *and* less in frontage than the requirements of the ordinance. Another respect in which said portions of other lots are different from the portion involved here is that the other portions are not adjacent to a street corner, whereas the portion involved here is adjacent to two street corners—that is, the portion involved here is bounded on three sides by streets. It appears from a diagram attached to plaintiffs' application for a variance that the house which they propose to build on the property would extend to a place which is approximately 10 feet from the street on the north end of the property—that is the end which adjoins the three streets. There was testimony that a house so located would constitute a traffic hazard.

As above stated, appellants also assert that 67.2 per cent of the lots in the vicinity of Lot 12 (a portion of which is involved here) are now exempt from the area restriction or the frontage restriction. In their brief they have

set forth a chart which includes the numbers, areas, and frontages of lots or parcels in Tract 8069 and in two other tracts. One of those other tracts adjoins Tract 8069. A corner of the other tract, referred to in the chart, is approximately 400 feet from the property involved here. The chart does not include another tract, a portion of which tract is across a street from the property involved herein. That tract (Prospect Park Tract) consists of 50 lots—and 10 of those lots do not meet the requirements of the ordinance. If the lots of that tract were included in appellant's chart for the purpose of determining the percentage of lots in the vicinity which are exempt from the area or frontage requirements of the ordinance, the percentage so exempt would be considerably less than the 67.2 per cent referred to in the brief. It is to be noted further that the percentage as shown by the chart is based on lots which are exempt either from the area restriction *or* from the frontage restriction; whereas, the portion of the lot involved here is deficient in both area *and* frontage.

At the hearing before the committee, several persons (approximately 30) objected to the variance. The owner of the southerly portion of Lot 12 (on which Mr. Zirwes had built a house) stated that he was in favor of the variance. Mr. Zirwes also stated that he was in favor of the variance.

It does not appear that the decision of the board of directors was arbitrary or discriminatory, or that the board abused its discretion.

The judgment is affirmed.

Lillie, J., concurred.

A petition for a rehearing was denied October 16, 1961, and appellants' petition for a hearing by the Supreme Court was denied November 15, 1961.