[L.A. No. 29894. In Bank. Dec. 13, 1971.]

JOSEPHINE MANDL HILL, Plaintiff and Respondent, v.
CITY OF MANHATTAN BEACH, Defendant and Appellant.

**COUNSEL**

Carl K. Newton, City Attorney, Colin Lennard and Burke, Williams & Sorensen for Defendant and Appellant.

Dudley Gray for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—This action for declaratory relief was brought to test the applicability of zoning and lot-split ordinances of the defendant City of Manhattan Beach to certain land owned by plaintiff. The trial court held that the various ordinances could not constitutionally be applied to plaintiff's property located in defendant city, that defendant abused its discretion denying plaintiff a variance, and that plaintiff was free to sell and develop the land as two separate building sites. We do not agree and reverse.

The parties have stipulated to the facts. After approval by the city, the property now owned by plaintiff became a record lot, designated Lot 1, Block 11 of Tract 3393, Los Angeles County, when a tract map was recorded in 1920. In 1928 plaintiff's predecessor in title purported to

divide Lot 1 into two parcels, each with a 37.41-foot frontage. Parcel A, on a corner and containing 5,255 square feet, was retained by the owner. Parcel B, containing 5,341 square feet, was sold to a third party.

In 1941 the city adopted a zoning ordinance, establishing, inter alia, a minimum lot size of 4,800 square feet. Plaintiff acquired Parcel A later the same year and the following year built a house thereon. In 1945 plaintiff acquired Parcel B from the city by tax deed sale and since that time has held title to both parcels without interruption. No buildings or structures have been built on Parcel B. Municipal authorities levy on the two parcels by separate tax statements.

The city enacted a comprehensive zoning ordinance in 1958 which provides generally for an increased minimum single lot area of 7,500 square feet and a minimum frontage of 50 feet in the particular area where Lot 1 is located. The city thereafter enacted, in 1967, a lot-split ordinance which prohibits the division and sale of a lot into two or more parcels without prior approval of the city.

During March of 1969 plaintiff applied for a lot-split variance to establish the separate character of her two parcels as legal building sites. Following notice and public hearings in accordance with the ordinance, first defendant's board of zoning adjustment and then its city council denied plaintiff's application. Plaintiff thereafter sought the instant relief.

A building site in defendant city may consist of the ground area of one or more lots. (Manhattan Beach Municipal Code, § 10-3.216.)[1] To be a "lot," a parcel of real property must have been designated on a plat, have been defined on a subdivision map, or must contain a prescribed area.[2] Plaintiff's entire property was designated a lot on both a plat and a subdivision map and contains more than the minimum required square footage. Parcel B, as a separate parcel, does not qualify as a legal lot under any of the three definitions.

---

[1]Unless otherwise indicated, all references are to the Manhattan Beach Municipal Code.

[2]Section 10-3.251, effective on November 6, 1958, provides:

" 'Lot' means:

"(a) A parcel of real property when shown as a delineated parcel of land with a number or other designation on a plat recorded in the office of the County Recorder; or

"(b) A parcel of land the dimensions or boundaries of which are defined by a record of survey recorded pursuant to the provisions of the Subdivision Map Act of the State in the office of the County Recorder; or

"(c) A parcel of real property not delineated as in subsections (a) or (b) and containing not less than the prescribed minimum square footage in the zone in which it is located. . . ." The applicable area requirement is 7,500 square feet (§ 10-3.406) and the applicable frontage requirement is 50 feet (§ 10-3.409) in the zone where plaintiff's property is located.

Development is, however, allowed on substandard lots. "When *a lot* has less than the minimum required area or width as set forth in any of the zones and area districts contained in this chapter, or in a specific plan, and was of record on November 6, 1958, *such lot* shall be deemed to have complied with the minimum required lot area or width. . . ." (§ 10-3.1421, italics added.)[3] This obviously pertains to "lots" as defined by subsections (a) and (b) of section 10-3.251 (fn. 2, *supra*) and provides for the development of such lots which are currently substandard but were not when created by earlier small-lot subdivisions. We are aided to such conclusion in view of a further provision specifically relating to those instances wherein a parcel which is only a portion of a "lot" may nevertheless be approved as a building site. "That *portion of a lot* containing an existing dwelling under separate ownership from the remainder of the original subdivided lot as of the date of the enactment of this section and constructed under lawful building permits is hereby declared to be a lawful building site. . . ." (§ 10-4.501.1(a), italics added.)

It is manifest that Parcel B does not qualify as a "lot" or building site within the express meaning of sections 10-3.251, 10-3.1421, 10-4.501.1(a) or any other provision dealing with substandard lots as effected by particular or exceptional circumstances, and we cannot enlarge upon those provisions to qualify the parcel as a substandard lot in the absence of more specific directions.

We also conclude that there is nothing in the nature of the acquisition of the two parcels which together comprise Lot 1 or other circumstances which renders the property two separate and distinct "lots" within general definitions of that term. It has already been delineated that under the controlling definition in the instant case only the entire property qualifies as a "lot" for development purposes and that neither of the two parcels, considered separately, does. There is no significant authority which persuades us to reach a contrary conclusion. In a case closely in point the Massachusetts Supreme Judicial Court has construed applicable and similar provisions consistently with the construction which we herein have given the ordinance. (*Vetter* v. *Zoning Board of Appeal of Attleboro* (1953) 330 Mass. 628 [116 N.E.2d 277]; see also *Galpin* v. *Village of River Forest* (1962) 26 Ill.2d 515 [187 N.E.2d 233]; *Korby* v. *Township of Redford* (1957) 348 Mich. 193 [82 N.W.2d 441]. But cf. *Schack* v. *Trimble* (1957) 48 N.J.Super. 45 [137 A.2d 22] (separation of substandard parcels allowed where they otherwise met definition of lot but as combined unit, meeting area requirement, they failed to satisfy definition).)

---

[3]Prior to April 17, 1969, the two references in section 10-3.1421 to "specific plan" read "precise plan." This amendment has no effect on the issues in the instant case.

In *Vetter,* the plaintiff owned adjacent lots, one developed and one undeveloped. The lots had been purchased at different times and were taxed separately. Neither lot contained the minimum area required by a zoning ordinance enacted subsequent to their acquisition. Thereafter the plaintiff sold the developed lot and sought a building permit to allow construction of a dwelling on the undeveloped lot. The applicable ordinance prohibited construction of a dwelling house "on a lot containing less than such minimum area; but nothing contained in this section shall prevent the erection or placing of any building on any lot . . . containing a smaller area, provided such lot on the effective date hereof does not adjoin other land of the same owner available for use in connection with said lot. [¶] No lot on which a dwelling house . . . is situated, whether heretofore or hereafter placed, shall be reduced in area if such lot is smaller than is hereby prescribed, or if by such reduction it would be made smaller than is hereby prescribed. . . ." The Massachusetts court, indicating that neither the method of acquisition nor method of taxation was of significant consequence, concluded that the two parcels were, under the applicable ordinance, but one lot on which plaintiff could not construct a second dwelling.

In the instant case the controlling ordinance does not contain a "merger clause," expressly requiring that substandard parcels be considered in conjunction with adjacent, commonly owned property as did the ordinance in *Vetter.* Plaintiff contends that this distinction precludes application of the *Vetter* analysis and, indeed, compels a determination that her two parcels not be merged. Contrary to plaintiff's contention we cannot predicate a legislative intent proscribing merger on the mere absence of a merger clause. That intent can best be ascertained from an examination of the entire ordinance. Opposed to the implications raised by the absence of a merger clause are more compelling implications raised by those provisions which expressly preclude the individual development of a parcel, whether or not adjacent to other lands under common ownership, of less than the prescribed lot size. Only such substandard parcels which were record lots on November 6, 1958 (§ 10-3.1421), or on which, on the same date, a dwelling already existed (§ 10-4.501.1(a)), are accorded exceptional treatment by the legislative body. It is manifest that had there been a legislative intent to exempt other particular substandard parcels without regard to the possibility of merger, express provision would have been made therefor. Argument similar to that advanced by plaintiff has been rejected under a New York ordinance which likewise contained no merger clause. (*Khare* v. *Incorporated Village of Massapequa Park* (1970) 62 Misc.2d 68, 69-71 [307 N.Y.S.2d 996], affd. (1970) 35 App.Div.2d 653 [314 N.Y.S.2d 357], affd. (1970) 27 N.Y.2d 991 [318 N.Y.S.2d 746, 267 N.E.2d 481].)

In view of the foregoing, it is clear that Parcel B does not qualify as a lot or other lawful building site under the applicable provisions of the Manhattan Beach Municipal Code. If Parcel B had been separately improved prior to the effective date of the zoning ordinance it would have qualified as a building site under section 10-4.501.1(a) and, it further appears, the city could not have constitutionally prohibited its development or sale. (*Morris* v. *City of Los Angeles* (1953) 116 Cal.App.2d 856 [254 P.2d 935].) If Parcel B, even though substandard, had been recorded as a "lot" on a plat or a subdivision map prior to the effective date of the zoning ordinance, it would be exempt from that ordinance and could be developed or sold separately. (§§ 10-3.251(a)-(b), 10-3.1421.) Since neither of these contingencies occurred, the owner of Parcel B, like any other owner of a substandard "non-lot" whether or not also the owner of adjacent land, cannot qualify such parcel as a building site under any provision of the ordinance.

As stated, plaintiff claims that there are constitutional prohibitions which compel the relief sought by her. ■ "The constitutionality of the principle of zoning is no longer an open question, and a restrictive regulation in this field pursuant to a municipality's comprehensive and systematic plan of community development, when reasonable in object and not arbitrary in operation, will be sustained as within the legitimate exercise of the police power. [Citations.]" (*Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95, 98 [222 P.2d 439].) Zoning ordinances which nevertheless are unreasonable, arbitrary or discriminatory in their application to particular properties will be held not applicable on constitutional grounds. (*Skalko* v. *City of Sunnyvale* (1939) 14 Cal.2d 213, 215-216 [93 P.2d 93].)

Plaintiff contends, but fails to demonstrate in what manner, the application of the ordinance under which she is denied the right to develop Parcel B is unreasonable, arbitrary or discriminatory as to her. Contrary to her contention, the separate status of Parcel B is not protected as property vested with a prior nonconforming use which cannot be arbitrarily divested. ■■ Although a reasonable nonconforming use of property of substandard size which creates no public nuisance forecloses the application of a subsequently enaced zoning ordinance which increases the minimum lot size, "land which has not been used for building purposes would not create a nonconforming use. 'A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance.' (*City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 453 (1954), . . .)" (43 Ops.Cal.Atty.Gen. 144, 147 (1964); see also *Ardolino* v. *Florham Park Board of Adjustment* (1957) 24 N.J. 94, 104 [130 A.2d 847]; *City of Harrisburg* v. *Pass* (1953) 372 Pa. 318, 324 [93 A.2d 447]; *Caruthers* v. *Board of Adjustment* (Tex.

Civ.App. 1956) 290 S.W.2d 340, 347.) ■ Nonuse is not a nonconforming use. (See *Morris* v. *City of Los Angeles, supra,* 116 Cal.App.2d 856, wherein sale of a substandard parcel was proper because both adjoining substandard parcels had been separately developed prior to enactment of the zoning ordinance.) ■ This rule is consistent with the further rule that reuse may be prohibited when a nonconforming use is voluntarily abandoned.[4] (*City of Fontana* v. *Atkinson* (1963) 212 Cal.App.2d 499, 507 [28 Cal.Rptr. 25]; *City of La Mesa* v. *Tweed & Gambrell Mill* (1956) 146 Cal.App.2d 762, 769 [304 P.2d 803].)

There is likewise no merit to plaintiff's claim of discrimination following from the availability of variances to other owners of substandard parcels. It is manifest that she, like the owner of any substandard parcel which adjoins other land within the same "lot," must obtain a lot-split variance before selling or developing the parcel separately. The owner of an isolated substandard parcel who cannot make his parcel conform to the zoning requirements by any method may be able to make a showing of hardship which would justify the granting of a variance. (§ 10-3.1603.) That is not true of plaintiff who may use Parcel B in conjunction with Parcel A, the remainder of Lot 1, and thereby realize some substantial benefit from Parcel B. ■ Although this may not be the use of Parcel B most economically beneficial to plaintiff, it does not render the parcel valueless and the limitation imposed on the use is not constitutionally prohibited. (See *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879 [264 P.2d 932]; cf. *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342].)

Many lots, both within the original tract establishing plaintiff's lot and in the immediate vicinity of her property, have undoubtedly been split in some manner. The record does not reflect how many divided lots are in common and how many in separate ownership. We assume that there are a number of substandard parcels held separately from the remainder of their original platted lots. That these parcels may have been developed or may hereafter be developed under variances granted bcause of circumstances which distinguish such parcels from Parcel B, or which raise other considerations pertinent to an application for a variance, does not

---

[4]We note that the City of Manhattan Beach has comprehensive provisions governing the continuation, abatement, and abandonment of nonconforming uses. (§§ 10-3.1501—10-3.1512.) Of collateral interest to the principal issue here is the provision for abatement of a nonconforming use not involving a structure within two years from November 6, 1958, and for loss of nonconforming rights to such a use by a six-month abandonment of that use. (§ 10-3.1502.) Under this provision, even had Parcel B been used sans structure separately from Parcel A, the right to such use would have terminated in 1960.

entitle plaintiff to a determination that Parcel B may be sold or developed separately from Parcel A. (See *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683, 691 [234 P.2d 972]; *McDonald* v. *City of Pasadena* (1961) 195 Cal.App.2d 662, 665-666 [16 Cal.Rptr. 42].)

■ Both procedural and substantive considerations indicate that the declaratory ruling that defendant city abused its discretion in denying a variance was erroneous. ■ "[W]hile an action for declaratory relief may properly test the constitutionality of a zoning ordinance (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 882 [264 P.2d 932]; *People* v. *Amdur* (1954) 123 Cal.App.2d Supp. 951, 968 [267 P.2d 445]), it is not an appropriate method for judicial review of administrative decisions (*Hostetter* v. *Alderson* (1952) 38 Cal.2d 499, 500 [241 P.2d 230])." (*Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 612 [12 Cal. Rptr. 182].) ■ Although proceedings for declaratory relief were not a proper vehicle, the complaint could and should have been construed as a petition for a writ of mandate to determine whether the defendant city or any of its agencies had prejudicially abused its discretion in denying plaintiff's application for a variance. (Code Civ. Proc., § 1094.5; *Hostetter* v. *Alderson, supra,* 38 Cal.2d 499, 500; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 638 [234 P.2d 981].) ■ From the discussion above, however, it is obvious that there was no abuse of discretion and thus no basis for mandatory relief.

Plaintiff in the instant case owns two parcels which are but one "lot" under the controlling provisions of the Manhattan Beach Municipal Code. Neither the nature of their acquisition nor their subsequent use and treatment by plaintiff or by taxing and other authorities justifies a conclusion under the applicable ordinance or constitutional compulsion that they may be separately developed or utilized.

The judgment is reversed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Sullivan, J., and Files, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.