[No. A070653. First Dist., Div. Three. Jan. 24, 1997.]

EARL RICK STOKES, Plaintiff and Appellant, v.
BOARD OF PERMIT APPEALS et al., Defendants and Respondents.

**COUNSEL**

Neil D. Eisenberg for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Andrew W. Schwartz and Kathryn J. Zoglin, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**PHELAN, P. J.**—The trial court denied plaintiff Earl Rick Stokes' petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5) which

sought an order requiring the building inspector for defendant City and County of San Francisco (the City) to reissue a building permit. We affirm.

## Factual and Procedural Background

The evidence is substantially undisputed. In March 1993, Stokes purchased a three-story building located at 132 Turk Street. Until 1984, and no later than 1987, the property had been used as a public bathhouse. Beginning in 1984, the City had enjoined the operation of public bathhouses as health hazards in order to stem the spread of the acquired immune deficiency syndrome (AIDS) virus. It does not appear the City directly enjoined the operation of this property. The record does not disclose if the prior owners closed the bathhouse as a direct result of the City's campaign, or because of a decline in business as a result of the health emergency. Nevertheless, the undisputed evidence established the property had been vacant at least seven years by the time Stokes purchased it. He intended to renovate the building and reopen it as a bathhouse.[1]

In 1985, the property was rezoned as "RC-4" (mixed residential/commercial use), and the location was designated part of the "North of Market Special Use District." Under these zoning ordinances, commercial use was permitted only on the ground floor, and any commercial use on the second floor required a conditional use permit. No commercial use at all was permitted above the second floor. (S.F. Planning Code, §§ 206.3, 209.4, subd. (b), 209.8, 249.5, subd. (c)(2), hereinafter Planning Code.) Additionally, the San Francisco Police Code required Stokes, as a new owner, to obtain a permit to operate the bathhouse even on the ground level. (S.F. Police Code, §§ 2601, 2620, 2627.)

Under the ordinances in effect at the time Stokes purchased the property, he would have had to obtain a conditional use permit to use the second floor as a bathhouse, and would be unable to use the upper floors for any commercial purpose unless he could qualify the building as a legal, nonconforming use. The Planning Code provides that legal, nonconforming uses may be continued in the form in which they lawfully existed, unless the operation has been significantly enlarged, discontinued or abandoned, or changed in use. (Planning Code, §§ 181-183.)

When the use has been discontinued, section 183 of the Planning Code specifically states: "Whenever a nonconforming use has been changed to a conforming use, or *discontinued for a continuous period of three years*, or

---

[1]The parties do not tell us and the record does not indicate when the injunction against bathhouses was lifted.

whenever there is otherwise evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being so changed, discontinued or abandoned be reestablished, and the use of the property thereafter shall be in conformity with the use limitations of this Code for the district in which the property is located." (Italics added.)

On November 3 and 17, 1993, Stokes filed applications for building permits to remodel the property. In the first application, he described the present and proposed use of the property as a "health club." In the second, he stated the present and proposed use was a "health studio/gym." This was false. The property was currently vacant and had not been used as a bathhouse or health club for at least seven years. In arguments before the board of permit appeals (the Board), his attorney stated the application did not ask if the property was vacant and maintained Stokes accurately represented that the property was last used as a bathhouse/health club.[2] On the basis of these misrepresentations, the City Planning Department issued the two building permits.

Stokes began work on the property soon thereafter, and by the time the City suspended the building permits on March 15, 1994, he claimed 95 percent of the renovation had been completed at a cost of nearly $400,000. On that date, zoning administrator Robert Passmore wrote Stokes, suspending the permits and directing him to stop work on the project. Passmore explained the building permits were erroneously issued because of the failure to disclose the building had been vacant for over six years and that a conditional use permit would be required.

On March 23, 1994, Stokes appealed that decision to the Board. At a public hearing on May 18, he argued he had a "vested right" to use all the floors as a bathhouse under the doctrine of nonconforming use and also that the City was estopped to revoke the building permits since he relied upon them and spent considerable money in renovating the property. He also stated he purchased the building based on remarks by the City Planning Department staff that the building could be used as a bathhouse. After hearing testimony from Stokes and neighbors and reviewing documentary evidence, the Board upheld the zoning administrator's decision to require conditional use permits for any commercial use above the ground floor.

The Board expressly determined Stokes had no vested right to continue to operate the bathhouse as a legal, nonconforming use because "overwhelming

[2] As the Board noted, Stokes is an attorney and a former member of the Board. His failure to accurately characterize the current use of the property in his permit applications appears more like deliberate deception than an honest mistake.

and unrefuted" evidence established that use as a bathhouse had been discontinued for more than three and possibly up to ten years. The Board also determined the City was not estopped to revoke the permits since they were issued in error. Significantly, the Board also found undisputed evidence the previous owners, in 1988, filed an application to convert the bathhouse to a shelter/senior center. The Board construed that application as evidence of intent to abandon the bathhouse.

On October 13, 1994, Stokes filed the instant petition for a writ of administrative mandate in the superior court raising the same vested rights and estoppel arguments.[3] On April 27, 1995, the court denied the writ petition on these grounds: (1) Stokes misrepresented the current use of the property; and (2) the property had been vacant for over three years. Judgment was entered for the Board and the City and on June 22, 1995. Stokes filed this timely appeal from the judgment denying his writ petition.

DISCUSSION

I.   *Vested Rights—Nonconforming Use*

Stokes contends he has a "vested right" to reestablish the bathhouse as a legal, nonconforming use, and the City is estopped to revoke the building permits under which he made extensive renovations to the property.

The law recognizes a vested right to continue a use which existed at the time zoning regulations changed and the use thereafter became a nonconforming use. (*Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors* (1996) 12 Cal.4th 533, 540, fn. 1 [48 Cal.Rptr.2d 778, 907 P.2d 1324], (*Hansen*); *Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 73 [227 Cal.Rptr. 667, 720 P.2d 15] (*Halaco*).) The law has also long recognized that "if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546] (*Avco*); *Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657, 660 [173 Cal.Rptr. 572].) Stokes claims a vested right under both theories.

In reviewing a claim of "vested rights" the superior court uses its independent judgment in making factual determinations based upon the administrative record. (*Hansen, supra,* 12 Cal.4th at pp. 559-560; *Halaco,*

---

[3]The City's demurrer was sustained to the second cause of action for inverse condemnation.

*supra*, 42 Cal.3d at pp. 74-75.) "Where the undisputed facts from which the superior court draws an inference do not point to a single conclusion, an appellate court reviewing a decision of the superior court exercising its independent judgment on the weight of the evidence is bound by an inference drawn by the superior court. [Citation.] With respect to the undisputed facts, however, where only the legal effect of those facts is in issue, the conclusions of the trial court are not controlling on appellate review. [Citation.]" (*Halaco, supra*, 42 Cal.3d at pp. 74-75.)

Applying these rules to this case, we conclude the judgment of the superior court must be affirmed.

### A.

In support of his contention, Stokes first argues that evidence the property had been vacant for three years under the Planning Code section 183,[4] is not the same as a finding of nonuse, i.e., vacancy alone, without an intent to abandon the property does not constitute discontinuance of use. The meaning of this statutory term is a question of law upon which we exercise our independent judgment. (*Golden State Homebuilding Associates* v. *City of Modesto* (1994) 26 Cal.App.4th 601, 609 [31 Cal.Rptr.2d 572].) We conclude appellant's claim is a distinction without a difference.

" ' "A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance." [Citation.]' [Citations.] Nonuse is not a nonconforming use. [Citation.]" (*Hill* v. *City of Manhattan Beach* (1971) 6 Cal.3d 279, 285-286 [98 Cal.Rptr. 785, 491 P.2d 369] (*Hill*); *Hansen, supra*, 12 Cal.4th at p. 552.) Here, the uncontroverted evidence established the building had been vacant and its use as a bathhouse had been discontinued for at least seven years prior to being purchased by Stokes. In fact, the building was not used for any lawful purpose during that time. These facts establish more than a temporary vacancy, but rather an intentional decision to abandon the premises. These facts plainly establish discontinued use under the Planning Code as a matter of law, and Stokes's vested rights claim to reestablish the bathhouse as a nonconforming use fails.

Stokes responds by focusing on the statement in *Hansen* that "we have never expressly held that the terms [discontinuance and voluntary abandonment] are synonymous." (*Hansen, supra*, 12 Cal.4th at p. 569.) From this he

---

[4]Planning Code section 183 reads: "Whenever a nonconforming use has been changed to a conforming use, or discontinued for a continuous period of three years, or whenever there is otherwise evidence a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being changed, discontinued or abandoned be reestablished, and the use of the property thereafter shall be in conformity with the use limitations of this Code for the district in which the property is located."

argues that discontinuance of use is not synonymous with abandonment. *Hansen* is inapposite. In *Hansen*, plaintiffs owned and operated an aggregate mining and production business. In 1975 they filed a reclamation plan detailing proposed future use of its mining operation and, specifically, the planned intensive mining and quarrying of the hillside which theretofore had been little utilized. Since 1954, plaintiffs had continuously occupied the property and had conducted its aggregate production business, which included mining and on-site production, storage and transportation of mined products. Almost all of the aggregate materials (sand, gravel and rock) had been mined from the riverbed and its banks. However, most of the rock from the hillside was held in reserve. (*Id.* at p. 544.) The amount of aggregate which was mined and quarried varied over the years as dictated by market conditions and customers' demands. The local zoning ordinance forbade continuation of nonconforming uses which had ceased operation for periods in excess of 180 days. (*Id.* at pp. 541-542, 546.) The Nevada County Board of Supervisors refused to approve the reclamation plan, ruling that plaintiffs needed a conditional use permit for the following reasons: (1) the proposed use constituted an impermissible intensification of a nonconforming use; and (2) the hillside quarrying was a separate operation from the riverbed mining and as such, it lost its legal, nonconforming status because hillside quarrying had been discontinued beyond the statutory period of 180 days. (*Id.* at p. 549.)

The Hansens challenged that ruling, claiming the "diminishing asset" doctrine applicable to mining operations, and more particularly, the nonconforming use doctrine gave them a vested right to expand one portion of the total operation (hillside quarrying) without needing a permit, despite the fact they had not quarried the hillside for periods of 180 days and up to 3 years, because stockpiles were sufficient to meet demand. In reversing the judgment denying plaintiffs' administrative mandate petition, the Supreme Court ruled the hillside quarrying operation was not a separate use; it was integral to the overall use of the property as an aggregate production business; the aggregate business as a total operation has not been discontinued; and plaintiffs did not lose their right to quarry the hillside through nonuse. (*Hansen, supra*, 12 Cal.4th at pp. 565-570.)

In reaching its decision the *Hansen* court noted: " 'Mere cessation of use does not of itself amount to abandonment although the duration of nonuse may be a factor in determining whether the nonconforming use has been abandoned' [citation]." (*Hansen, supra*, 12 Cal.4th at p. 569.) Stokes's entire position rests on this reasoning. While that rule has clear application to the facts in that case, it does not assist him on the record before us.

In *Hansen*, plaintiffs were continuously operating some portion of their aggregate production business on the property. Here, by contrast, Stokes's

predecessors had completely vacated the building for seven years and the building had not been used for *any* purpose at the time plaintiff took possession. There are no facts to which Stokes can point as evidence the prior owners intended to and in fact did continue to operate the property as a bathhouse or for a related use. This contention also fails.

Although it was not necessary to its ruling, the Board also found the facts established that the prior owners had intended to abandon the property, which is a separate ground for defeating a nonconforming use. The Board determined the prior owners' application to convert the bathhouse to a senior center/shelter demonstrated an intent to abandon the nonconforming use as a bathhouse. Stokes has not challenged that ruling on appeal.

## B.

Stokes further argues the discontinuance must be voluntary. He claims since the prior owners closed the bathhouse under direct order from the City, or at least the imminent threat of such an order, the discontinuance was not voluntary and the nonuse cannot defeat the right to continue a nonconforming use. There was no evidence as to the reason for the closing. But assuming it was closed as a public health hazard, Stokes has cited no authority for the proposition that there can be no finding of "nonuse" when the business was closed under lawful order.

Stokes properly states the prevailing rule that "reuse may be prohibited when a nonconforming use is voluntarily abandoned." (*Hill, supra,* 6 Cal.3d at p. 286, fn. omitted.) However, to adopt his argument that an exception exists when the discontinuance is required by law, would turn the doctrine of nonconforming use on its head. That the City may abate a particular use as a menace to the public health or as a public nuisance is beyond dispute. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 71-72 [101 Cal.Rptr. 768, 496 P.2d 840].) As stated in *Hill,* " ' "A nonconforming use is a *lawful* use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance." ' " (*Hill, supra,* 6 Cal.3d at p. 285, italics added.) The Planning Code likewise defines nonconforming use as "a use which existed *lawfully* at the effective date of this Code, or of amendments thereto, . . ." (Planning Code, § 180, subd. (a)(1), italics added.) In this regard, the *Hill* court noted that a reasonable nonconforming use cannot also create a public nuisance. (6 Cal.3d at p. 285.)

Since it would have been against the law to use the Turk Street property as a public bathhouse at the time the zoning changes became effective in 1985,

no lawful, nonconforming use existed to which Stokes can claim a vested right. (*County of Sonoma* v. *Rex* (1991) 231 Cal.App.3d 1289, 1297 [282 Cal.Rptr. 796] [unlicensed bed and breakfast inn did not lawfully exist at time of zoning change and did not qualify as a nonconforming use].) Here, the use of 132 Turk Street as a bathhouse had been discontinued as an unlawful health hazard for several years before he purchased the building. He cannot therefore assert a vested right to reopen the property as a *lawful*, nonconforming use when he bought the building. Accordingly, there are no grounds to avoid the bar resulting from discontinuance of use.

## II. *Vested Rights—Reliance on Building Permits*

Stokes next claims he has a vested right to complete construction of the bathhouse because he spent almost $400,000 in improvements in good faith reliance on the building permits. (See *Avco, supra,* 17 Cal.3d at p. 791; *Anderson* v. *City of La Mesa, supra,* 118 Cal.App.3d at p. 661.)

The trial court found that Stokes misrepresented the current use of the property when he should have disclosed it was vacant and the City was misled into issuing the building permits based solely on this misrepresentation. Substantial evidence supports these findings. On this record, he did not act in good faith reliance on the building permits and has no vested right to complete construction. (See *Smith* v. *Kraintz* (1962) 201 Cal.App.2d 696, 699-700 [20 Cal.Rptr. 471] [city may revoke building permit based on false statement in application].)

## III. *Equitable Estoppel*

Finally, Stokes also argues that the City is estopped from revoking the permits. This is the same argument he makes in part II, *ante.* The vested rights doctrine is but a specific application of the doctrine of estoppel against a governing body. (See *Avco, supra,* 17 Cal.3d at p. 793.) One of the elements of estoppel is that the party to be estopped must be apprised of the facts. (*County of Sonoma* v. *Rex, supra,* 231 Cal.App.3d at p. 1295.) As discussed in part II, *ante,* Stokes misrepresented the true facts about the present use of the property to the City in his building permit applications. Accordingly, he cannot claim equitable estoppel. There is no additional conduct by the City on which he can claim estoppel and this contention also fails.

## CONCLUSION

We conclude as a matter of law that the use of the property was discontinued for more than three years and Stokes does not have a vested right to

reopen the former bathhouse as a legal, nonconforming use. We also determine there is substantial evidence to support the trial court's findings that he misrepresented the present use of the building and he does not have a vested right to complete construction under the building permits.

The judgment denying the writ petition is affirmed.

Corrigan, J., and Parrilli, J., concurred.