[No. B055857. Second Dist., Div. Six. May 26, 1992.]

ANITA HELLMAN et al., Plaintiffs and Appellants, v.
LA CUMBRE GOLF AND COUNTRY CLUB, Defendant and
Respondent.

1226

**COUNSEL**

Delwiche & Von Dollen and S.C. Von Dollen for Plaintiffs and Appellants.

Kosmo, Cho & Brown, Frederick W. Kosmo, Griffith & Thornburgh and John R. Rydell for Defendant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Anita Hellman and M. Stanley Goldberg appeal from a judgment in favor of respondent La Cumbre Golf and Country Club against appellants on their cause of action for damages and injunction for nuisance. They contend: (1) the evidence is insufficient to sustain the finding that the rate of golf balls landing on their property has been the same since 1957; (2) failure to issue a proper statement of decision is reversible error per se; (3) the doctrine of coming to a nuisance is no longer viable; (4) the statute of limitations is inapplicable to a continuing nuisance; and (5) they met their burden of proof in showing existence of a nuisance. We affirm the judgment.

### FACTS

Appellants own a home adjacent to the 10th fairway of La Cumbre Golf and Country Club in the Hope Ranch area of Santa Barbara. The club has been in operation since 1957. Appellants' home was built in 1970 and they visited the house on three occasions before purchasing the property in August 1985. On one visit, Mr. Goldberg discovered a golf ball in the gutter but the seller said golf balls did not pose a problem. On another occasion, Mr. Goldberg walked from the 10th tee down the 10th fairway to pace the distance to the property line. Since he could not see the house from the fairway, which is 75 to 80 feet higher than the house, he concluded that golf balls would not be a hazard. Ms. Hellman expected that living adjacent to a golf course might result in some golf balls on the property.

After moving in, appellants discovered five to ten golf balls on their property every week. Since 1985, Mr. Goldberg has collected approximately 1,300 golf balls which were not retrieved by their owners. Golf balls land on the property every day of the week with the heaviest concentration on weekends. On several occasions the balls have almost hit appellants. Both appellants' automobiles have been dented by golf balls and Ms. Hellman accepted $1,000 less for her vehicle due to golf ball dents when she sold it. Appellants are afraid to have guests outside during the daytime and do not use the swimming pool for fear of being hit by golf balls.

The typical golf hole consists of a tee area, fairway and hole. Every golf hole at La Cumbre has three tee locations, a women's, men's, and championship tee. The championship tee is farthest from the hole, 486 yards, the

men's tee is 448 yards, and the women's tee 445 yards. Appellants' expert, Johnstone, testified that the dimension of the safety standard for a golf hole can be illustrated by a cone or wedge shape, narrow at the tee, and spreading to a distance of 150 feet on each side of the center line of the fairway at a point 150 yards from the tee and continuing down the fairway.

Respondent's expert, Olson, agreed essentially with this description except that he testified the spreading out of 150 feet on either side of the fairway center line does not occur until 250 yards from the tee. Appellants' expert opined that a condition exists that is more hazardous than would be normally designed in a golf tee due to the elevation of the tee, the inclination of most right-handed golfers to slice the ball, and the narrowness of the fairway at the property line. Mr. Johnstone proposed two solutions to minimize or eliminate golf balls landing on appellants' property: (1) move all the tees down off the hill to the lower area, across from the far corner of appellants' home or (2) abandon the current men's tees, move them to the current women's tee and then add a hedge along the right side of the tee to help catch errant balls.

Mr. Olson opined that from a design and setbacks safety standpoint, the course met the standard practice at the time it was built and acceptable standards of today. He also stated that the 10th tee is almost a "signature" tee. Changing it would affect the playability, increasing it from a men's par four to a par five. He indicated that moving the tee would affect sales value of membership and that the course rating is based upon the degree of difficulty and challenge of the holes. He did suggest that changes in the degree of tilt of the tee and adding a marker pole could eliminate many of the errant balls. Respondent stated that it intended to adopt Mr. Olson's recommendations regardless of the outcome of the trial.

Respondent's experts and witnesses testified that the club has averaged 100 players daily and that since 1959, the tees were in the same place except for the championship tee which did not exist at first. The golf professional who had worked at the club since 1957 had personally witnessed only three to six balls hit into appellant's property. Appellants were the first persons to complain.

The court ruled, in its tentative decision, that the evidence supports that balls have landed on appellants' property at the same rate since the club opened in 1957 and that appellants have not established that a nuisance exists. The court ruled that based on all the circumstances, it could not find that respondent's use of its property is unreasonable or that it constitutes a nuisance. It held unnecessary the resolution of respondent's affirmative

defense which alleged the existence of a prescriptive easement. Had it been called upon to make that determination, the court indicated it would have concluded that a prescriptive easement exists under the authority of *MacDonald Properties, Inc.* v. *Bel-Air Country Club* (1977) 72 Cal.App.3d 693 [140 Cal.Rptr. 367].

When appellants requested a statement of decision, the court essentially adopted its tentative decision. Appellants filed objections and requested that the court answer 19 questions concerning the factual and legal basis of its decision. The court refused to do so.

## DISCUSSION

■ Appellants claim that the primary ground of this appeal is lack of substantial evidence to support the judgment, most clearly demonstrated by the insufficient statement of decision, which, they assert, is reversible error per se. They contend that the trial court did not adequately discuss the issue of unreasonable interference of their use and enjoyment of the property due to respondent's activity.

■ However, a reviewing court will not find unsupported the trial court's findings merely because it might reasonably draw different inferences from those the trial court reasonably drew unless it clearly appears that under no hypothesis is there substantial evidence to support the trier of fact's finding. (*Murphy* v. *Ablow* (1954) 123 Cal.App.2d 853, 858, 859 [268 P.2d 80].) Questions of credibility and resolution of conflicting evidence are for the trier of fact. (*Ibid.*)

■ In reviewing the sufficiency of the evidence, our task begins and ends with a determination whether any substantial evidence exists, contradicted or uncontradicted, which will support the trier of fact's conclusion. (*Louis & Diederich, Inc.* v. *Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1584 [234 Cal.Rptr. 889].) ■ " 'An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action.' " (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 44 [221 Cal.Rptr. 171]; Evid. Code, § 600, subd. (b).) A deduction drawn from inferences is just as probative in resolving an issue of fact as is direct evidence. (*Ibid.*) Whether a particular inference can be drawn from certain evidence is a question of law, but whether, in a given case, the inference shall be drawn is a question of fact for the trier of fact's determination. (175 Cal.App.3d, at pp. 44-45; *Louis & Diederich, Inc.* v. *Cambridge European Imports, Inc., supra*, 189 Cal.App.3d 1574, 1584.)

Here, the trial court could reasonably infer from the evidence that the rate of golf balls descending on appellants' property had been constant since the club opened; the same number of players used the club now as then, the tees were in the same location, and five to ten balls descended on appellants' property weekly since they moved to the property in 1985.

In rendering a statement of decision under Code of Civil Procedure section 632, a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. (*In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 686-687 [226 Cal.Rptr. 485]; *Nunes Turfgrass, Inc.* v. *Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1525 [246 Cal.Rptr. 823].) Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. (*In re Marriage of Garrity and Bishton, supra,* 181 Cal.App.3d 675, 687.) A failure to find on an immaterial issue is not error. (*Ibid.*; *Nunes Turfgrass, Inc.* v. *Vaughan-Jacklin Seed Co., supra,* 200 Cal.App.3d 1518, 1525.) The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. (*Nunes, supra,* at p. 1525.)

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . ." Whether or not a use in itself lawful constitutes a nuisance depends upon a number of circumstances: locality and surroundings, the number of people living there, the prior use, whether it is continual or occasional, and the nature and extent of the nuisance and of the injury sustained therefrom. (*McIntosh* v. *Brimmer* (1924) 68 Cal.App. 770, 777 [230 P. 203].) The law relating to private nuisance is one of degree. (*Ibid.*) Whether the use is unreasonable or not is an inference to be drawn from all the facts. (*Ibid.*)

The basic concept underlying the law of nuisance is that one should use one's own property so as not to injure the property of another. (*Lussier* v. *San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 100 [253 Cal.Rptr. 470].) An action for private nuisance is designed to redress a substantial and unreasonable invasion of one's interest in the free use and enjoyment of one's property. (*Ibid.*) " 'The invasion may be intentional and unreasonable. It may be unintentional but caused by negligent or reckless

conduct; or it may result from an abnormally dangerous activity for which there is strict liability. On any of these bases the defendant may be liable. On the other hand, the invasion may be intentional but reasonable; or it may be entirely accidental and not fall within any of the categories mentioned above.' " (*Ibid.*; see also Rest.2d Torts, § 822.) Determination whether something, not deemed a nuisance per se, is a nuisance in fact in a particular instance, is a question for the trier of fact. (206 Cal.App.3d at p. 106, fn. 10.)

■ Here, the trial court's statement of decision recounted the facts stated *supra* underlying the challenged conduct. ■ The initial determination of what constitutes a nuisance includes a consideration of conflicting interests leading to a conclusion whether the harm suffered outweighs the utility of the conduct. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity § 153, p. 833.) That the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is not in itself sufficient to bar his action but is a factor to be considered in determining whether the nuisance is actionable. (Rest.2d Torts, § 840D; see also 11 Witkin, *op. cit. supra*, Equity § 150, p. 830.)

■ From the evidence the court reasonably inferred that circumstances that exist today have existed since the course opened for play in 1957. The court also set forth the factors to consider, i.e., locality, surroundings, prior use, and the nature and extent of the injury caused thereby. It also noted that appellants came to the property with knowledge that it was next to a golf course, which put them on at least constructive notice that golf balls would be landing on their property. (See *Friedman* v. *Pacific Outdoor Adv. Co.* (1946) 74 Cal.App.2d 946, 952 [170 P.2d 67].)

The statement of decision sufficiently sets forth the factual and legal basis of the court's decision that appellants failed to show that respondent's actions were unreasonable. Moreover, had the court answered all of appellants' proposed questions, their cause would not be advanced; the trial court resolved the conflicting testimony of the experts in respondent's favor and substantial evidence supports that relocating the tee, as requested by appellants, would have been unduly burdensome compared to the type of intrusion on appellants' property. Substantial evidence supports the trial court's decision that respondent is not operating a nuisance.

Since the judgment is supportable without a decision whether respondent perfected a prescriptive easement, we need not discuss whether the statement of decision is sufficient on that issue.

The judgment is affirmed. Each party to bear its own costs on appeal.

Gilbert, J., and Yegan, J., concurred.