[No. C047314. Third Dist. Sept. 29, 2005.]

PALLCO ENTERPRISES, INC., Cross-complainant and Appellant, v. DENTON BEAM et al., Cross-defendants and Respondents.

COUNSEL

John David Pereira for Cross-complainant and Appellant.

Montague & Viglione and Dennis L. Viglione for Cross-defendants and Respondents.

OPINION

**HULL, J.**—Cross-complainant Pallco Enterprises, Inc. (Pallco), appeals from a judgment of the trial court finding that advertising displays erected on the property of cross-defendants Denton and Carolyn Beam (the Beams) are not a public nuisance. Pallco contends the court erred in deferring to the California Department of Transportation (CalTrans) on the nuisance issue and otherwise misapplied the provisions of the state Outdoor Advertising Act (hereafter the Outdoor Advertising Act or the Act) (Bus. & Prof. Code, § 5200 et seq.) and its associated regulations. We affirm the judgment.

### FACTS AND PROCEEDINGS

The Beams are the owners of a parcel of real property (the property) along State Highway 50 in the City of Rancho Cordova. In 1958, the Beams' predecessor obtained a permit to maintain an advertising display on the property facing east, with dimensions six feet by 10 feet and the bottom four feet above the ground (permit No. 22473). In 1962, a permit was issued to maintain a display on the same structure facing west (permit No. 22474). The dimensions of this display were seven feet by 20 feet and five feet above the ground. At the time, there were no regulations on the size of advertising displays. Neither permit authorized illumination.

In 1965, the federal government enacted the Highway Beautification Act of 1965 (23 U.S.C. § 131 et seq.). In response, the state amended the Outdoor Advertising Act in 1967 to provide, among other things, that no advertising display may be placed within 500 feet of another display on the same side of the highway. (Bus. & Prof. Code, § 5408, subd. (d).) At the time of this amendment, another advertising display existed within 500 feet of the Beams' displays, making the Beams' displays "nonconforming." As defined by the Outdoor Advertising Act, a nonconforming display is one "that was lawfully placed, but that does not conform to the provisions of [the Act], or the administrative regulations adopted pursuant to [the Act], that were enacted subsequent to the date of placing." (Bus. & Prof. Code, § 5216.5.)

The Beams purchased the property in 1998. At the time, the west-facing display was seven feet by 20 feet in size and both east and west displays were illuminated.

Pallco, doing business as Orion Outdoor Media, controls approximately 100 advertising displays. Pallco sought to construct a new advertising display on property owned by Tom Tuohy west of the Beams' property. However, because the Beams' displays were within 500 feet of the proposed location for the Pallco display, Pallco's plans required removal of the Beams' displays.

Pallco initially offered to purchase the Beams' displays, but this was rejected by the Beams. Pallco offered to pay the Beams $1,000 per month for 20 years. During its discussions with the Beams, Pallco informed them their displays were illegal and subject to removal. The Beams investigated Pallco's claim in January 2000 and determined the displays were legal but nonconforming. At one point, Tuohy met with the Beams and offered them $100,000 in a "little brown paper sack" to eliminate their displays. The Beams were told if they did not agree, their displays might become blocked by trees or a trailer. Two months later, trees and a trailer appeared in front of the Beams' displays.

Viacom Outdoor Advertising (Viacom), the lessee of the Beams' displays, initiated this lawsuit against Pallco. Pallco filed a cross-complaint against Viacom and the Beams. The dispute between Viacom and Pallco was later settled. The amended cross-complaint against the Beams alleged both a public and a private nuisance based on violations of the Outdoor Advertising Act. In particular, Pallco alleged the Beams' displays had been illuminated and raised higher than the original permits allowed. Pallco sought removal of the Beams' displays.

The Beams met with CalTrans in the summer of 2002, six to eight months after being sued, to discuss the legality of their signs. At the meeting, the Beams informed CalTrans of the dimensions of their displays and presented a copy of the cross-complaint.

On September 25, 2002, the Beams moved for a stay of the proceedings based on the primary jurisdiction of CalTrans over Pallco's claims. That motion was apparently denied, as the matter proceeded to trial.

In April 2003, the Beams received a citation from CalTrans regarding the raising and illumination of their displays. The Beams met with CalTrans and agreed to stop illuminating their displays. On May 21, 2003, CalTrans sent the Beams a letter indicating the physical configuration of their displays is

legal and the Beams have agreed not to illuminate their displays. The letter continued: "Therefore, the violation issued on April 7, 2003, (violation number V03-004) has been corrected, and the subject displays are in compliance with the Outdoor Advertising Act and its regulations. The displays may remain as configured and the applicable outdoor advertising permits may remain in force."

Pallco's cross-complaint was tried to the court, which issued a tentative decision. Pallco requested a statement of decision. The court issued a proposed statement of decision finding the Beams' displays not to be a nuisance. In its statement, the court relied heavily on the prior determination by CalTrans that the displays are in compliance with the Outdoor Advertising Act. Judgment was entered for the Beams, including an award of costs as the prevailing party.

### DISCUSSION

Pallco challenges the trial court's conclusion the Beams' displays do not constitute a nuisance. In a more or less scattershot and redundant fashion, Pallco argues the court improperly deferred to CalTrans, misread the statutes and regulations applicable to outdoor advertising displays, ignored other applicable laws, incorrectly concluded Pallco has no property interest worthy of protection and failed to make adequate findings in its statement of decision. We shall attempt to rearrange and synthesize Pallco's arguments so that they may be addressed in a coherent fashion.

### I

### *Regulation of Outdoor Advertising*

In 1933, the Legislature first regulated the use of off-premises advertising structures. However, this initial regulation was concerned only with matters of safety, structural integrity and decency. (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1156 [26 Cal.Rptr.2d 217, 864 P.2d 488] (*Traverso*).) Three decades later, in an attempt to spearhead state legislation to beautify American cities, the federal government enacted the Highway Beautification Act of 1965 (23 U.S.C. § 131). (*Traverso, supra*, at pp. 1156–1157.) In response, the California Legislature amended the Outdoor Advertising Act, "greatly expanding the state's regulatory authority over outdoor advertising by creating stricter standards for the erection and maintenance of billboards. [Citations.] State regulation was extended to every mile of every major road in California with emphasis placed not only on public safety and welfare, but also on protecting the public investment in California's highways and on aesthetic considerations. [Citation.]" (6 Cal.4th at p. 1157.)

As amended, the Outdoor Advertising Act declares that the regulation of advertising displays adjacent to public highways is "necessary to promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering on such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively . . . ." (Bus. & Prof. Code, § 5226.) The Legislature found outdoor advertising to be "a legitimate commercial use of property adjacent to roads and highways" (*id.*, subd. (a)) and "an integral part of the business and marketing function" that should be allowed to exist in business areas subject to reasonable regulation (*id.*, subd. (b)).

■ Under the Outdoor Advertising Act, no advertising display may be placed in a business area if the display exceeds 25 feet in height and 60 feet in width, or 1,200 square feet in total area, excluding the support structure. (Bus. & Prof. Code, § 5408, subd. (a).) No advertising display may be placed within 500 feet of another display on the same side of the highway or within 500 feet of an interchange. (*Id.*, subd. (d).) However, the foregoing does not apply to back-to-back displays or displays in existence on August 1, 1967, that are permitted by city or county ordinance. (*Id.*, subds. (e)(2), (4).)

■ No advertising display may be placed without first obtaining a permit from CalTrans. (Bus. & Prof. Code, § 5350.) Any advertising display that is placed or exists in violation of the Act is a public nuisance and may be removed by any public employee. (Bus. & Prof. Code, § 5461.) CalTrans may revoke any permit and remove or destroy any display for failure to comply with the Act "after 30 days' written notice." (Bus. & Prof. Code, § 5463.) However, the remedies provided in the Act for removal of illegal advertising displays "are cumulative and not exclusive of any other remedies provided by law." (Bus. & Prof. Code, § 5465.)

## II

### *Deferring to CalTrans*

Pallco contends the trial court improperly deferred to CalTrans to resolve the issues presented in this litigation. In its statement of decision, the court said: "The Outdoor Advertising Act delegates to the Department of Transportation the authority to promulgate orders and regulations to implement the statute. CalTrans has, in fact, adopted extensive and detailed regulations regarding outdoor advertising signs. CalTrans also has responsibility for

enforcement of the statute. [California Code of Regulations, title 4,] [s]ection 2440 et seq. of the regulations set forth the procedures by which CalTrans deals with violations. The regulations provide a comprehensive system to enforce the federal and state standards regarding highway advertising while at the same time protecting individual property rights by allowing a period of time for correction of violations before an unlawful sign is removed.

"In the circumstances, the Court has a limited role in determining whether a regulation or the agency's interpretation of its regulation is invalid. Pallco makes no facial challenge to the regulation itself. Pallco challenges the agency's interpretation and application of its regulations. [¶] . . . [¶]

"Pallco contends that the Business and Professions Code section 5465 provision that the remedies of the statute are cumulative and not exclusive empowers the Court to order removal of the signs. However, the arguments made by Pallco . . . essentially require the Court to substitute its independent judgment on the facts and policy already determined by Caltrans. The Court has no authority to do so. . . ."

Pallco contends that because this matter is one for the abatement of a nuisance, it is not controlled by the Outdoor Advertising Act or CalTrans. According to Pallco, the cross-complaint "was not an Administrative Action involving CalTrans but an action for public and private nuisance authorized under the Outdoor Advertising Act and focusing on a continuing nuisance." Pallco cites Business & Professions Code section 5465 which, as indicated previously, states the remedies provided by the Act are not exclusive to other remedies provided by law.

While it is true this matter is not a CalTrans administrative proceeding under the Outdoor Advertising Act, and such administrative proceeding may not be the exclusive vehicle for remedying an advertising display alleged to be a nuisance, it is nevertheless also true the sum and substance of Pallco's claim is that the Beams' displays are a nuisance solely because they violate the Act. Pallco does not claim the displays are unsafe or otherwise threaten adjacent property or the public. Thus, the determination of whether the displays constitute a nuisance turns, in the first instance, on a proper interpretation of the Act.

Pallco's argument that the trial court improperly deferred to CalTrans concerns the agency's interpretation of the relevant statutes and regulations. Among other things, the court accepted CalTrans's interpretation that the

owner of an offending display may have 30 days to correct the situation and such correction does not require bringing the displays into conformity with current law. We shall address these arguments in the following parts.

III

*Thirty-day Correction Period*

Pallco contends CalTrans erroneously interpreted the Act and regulations to allow the Beams 30 days to remove the illumination from the displays. Pallco argues this 30-day period is intended only as a notice and opportunity to defend, not an opportunity to correct. Pallco further argues an interpretation of the Outdoor Advertising Act to permit a 30-day correction period conflicts with common law and runs afoul of the Highway Beautification Act, thereby subjecting the state to a loss of federal highway funds.

Business and Professions Code section 5463 reads: "The director may revoke any license or permit for the failure to comply with this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter after 30 days' written notice . . . ." CalTrans regulations elaborate on this 30-day notice period. California Code of Regulations, title 4, section 2441 (hereafter regulation 2441) states: "The owner has 30 days from the date of the certified mailing of the violation notice to respond as follows: [¶] (1) Correct the violation, or [¶] (2) Remove the Display, or [¶] (3) Appeal to the Director in writing pursuant to the provisions of [regulation] 2441(b) . . . ." (Reg. 2441, subd. (e).)

Pallco contends regulation 2441 conflicts with Business and Professions Code section 5463, because the latter was intended only to provide notice and an opportunity to be heard, not an opportunity to correct. Pallco argues the trial court improperly deferred to CalTrans's interpretation on this issue. We disagree.

■ In matters of statutory construction our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In order to determine intent we begin with the language of the statute itself. (*Ibid.*) If the language is clear, there is no need to resort to other indicia of intent and no need for further construction. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Business and Professions Code section 5463 permits the director to revoke a license or permit and remove and destroy an advertising display "placed or

maintained in violation of this chapter after 30 days' written notice . . . ." This provision is susceptible to two interpretations, depending on whether the "after 30 days' written notice" clause applies to "remove and destroy" or "placed or maintained." If the former, an advertising display that is placed or maintained in violation of the Act may be removed and destroyed after 30 days' written notice, regardless of whether the display is corrected during the 30 days. If the latter, an advertising display may be removed and destroyed only if it is placed or maintained in violation of the Act after 30 days' written notice. In other words, if at the end of the 30-day period the display is no longer placed or maintained in violation of the Act, i.e., it has been corrected, it may no longer be removed and destroyed.

■ "Ordinarily, we give great weight to the interpretation of a statute by the administrative agency empowered to promulgate regulations to advance its purpose unless the interpretation is clearly erroneous." (*Norman v. Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 8 [192 Cal.Rptr. 134, 663 P.2d 904].) If not clearly erroneous, such interpretation will normally be accepted. (*Southern Cal. Lab. Management etc. Committee v. Aubry* (1997) 54 Cal.App.4th 873, 884 [63 Cal.Rptr.2d 106].)

In support of its contention regulation 2441 conflicts with Business and Professions Code section 5463, Pallco relies on *Traverso, supra,* 6 Cal.4th 1152, and the fact section 5463 is silent about any opportunity to correct a violation of the Act. This reliance is misplaced.

In *Traverso*, the state high court concluded Business and Professions Code section 5463, which at the time provided for a 10-day notice (Stats. 1970, ch. 991, § 2, p. 1780), satisfied due process requirements. The court indicated due process requires notice and an opportunity to be heard, and a right to be heard is implicit in the notice requirement. (*Traverso, supra,* 6 Cal.4th at pp. 1162–1165.) According to the court: "The 10-day period can serve only one function: to allow the billboard owner sufficient time to investigate and, if appropriate, *to contest* CalTrans's determination that a violation has occurred. Nothing in the Act or the regulations indicates that Caltrans would refuse to afford the billboard owner a hearing on request." (*Id.* at p. 1165.)

■ *Traverso* does not answer the question presented here. The issue there was whether the 10-day notice requirement satisfies due process. The court concluded a right to be heard is implicit in the notice requirement. However, the court was not asked and did not consider if the period could also be used to correct an illegality. Cases are not authority for propositions not considered

therein. (*McKeon v. Mercy Healthcare Sacramento* (1998) 19 Cal.4th 321, 328 [79 Cal.Rptr.2d 319, 965 P.2d 1189].)

As for the silence of Business and Professions Code section 5463 on whether there is an opportunity to correct, that section is also silent on whether the purpose of the notice requirement is to allow the offender an opportunity to object or to be heard. No significance should therefore be placed on such silence.

■ CalTrans has interpreted Business and Professions Code section 5463 to provide an opportunity to object to the notice, request a hearing, correct the violation, remove the display, or appeal the notice to the CalTrans's director. (Reg. 2441.) There is nothing clearly erroneous in this interpretation. As discussed above, affording a right to correct is one of two possible interpretations of the statutory language. While Pallco argues this interpretation is inconsistent with the intent of the Act to eliminate nonconforming uses, Pallco ignores the fact Business and Professions Code section 5463 and regulation 2441 apply to all advertising display owners, not just those with nonconforming uses. Pallco's interpretation would eliminate the right to correct under all circumstances. This is inconsistent with a desire to bring offending advertising displays into compliance with the Act as soon as possible. Those served with a violation notice would have only one option short of removing the display, to fight the charge, thereby dragging out the process and depleting public resources. We conclude CalTrans properly interpreted Business and Professions Code section 5463 to allow an opportunity to correct the alleged violation.

Pallco contends that, to the extent the 30-day period provides a right to correct, the Beams were on notice of the violation at least by the time this lawsuit was filed, which was much longer than 30 days before the illumination was removed. Thus, Pallco argues, the Beams forfeited any right to correct by waiting until after they were cited by CalTrans.

■ We disagree. It is one thing for CalTrans to give notice of a violation of the Act and quite another for a private party to give such notice by way of a lawsuit. CalTrans is the agency charged with enforcement of the Act, and the 30-day period is an element of the Act. It is only notice by CalTrans that triggers the 30-day period. (Bus. & Prof. Code, § 5463.) As already explained, the 30 days is not intended solely as a notice period and, thus, the fact the offender is on notice for more than 30 days is irrelevant. Furthermore, notice by way of a private lawsuit can hardly substitute for notice by

CalTrans. To accept Pallco's interpretation and permit the 30-day period to begin upon suit by a private party would mean any time a display operator is sued by a competitor for a violation of the Act, it must immediately correct the situation or forever lose the right to do so. This is not a reasonable interpretation of the Act.

## IV

### *The Meaning of "Correct"*

■ As stated previously, regulation 2441 allows an owner 30 days from the date of notice to "[c]orrect the violation." (Reg. 2441, subd. (e)(1).) Other options available are to remove the display or appeal to the director of CalTrans. (Reg. 2441, subd. (e).) Pallco contends the right to "correct" the violation means, in the case of a nonconforming display, to bring the display into conformance with the Act. In other words, it is not enough just to remove the offending feature of the display, such as in this case by removing illumination. The display must be made to comply with the current version of the Act. Thus, according to Pallco, because the Beams' displays are nonconforming due to their location within 500 feet of another display, the displays must be removed in order to be corrected.

Pallco contends CalTrans incorrectly interpreted the Act to permit a nonconforming display to be returned to its nonconforming condition. This interpretation, Pallco argues, is inconsistent with the public policy in favor of eliminating nonconforming uses. Pallco further argues this interpretation treats owners of nonconforming displays better than owners of conforming displays.

■ As stated previously, we defer to CalTrans's interpretation of the Act to the extent it is not clearly erroneous. In this instance, we find nothing clearly erroneous in CalTrans's determination that the word "correct" means a return to the conditions existing at the time the offending change to the display was made. Under Pallco's interpretation, the only way the Beams' displays could be made to conform to the Act in its present form is to remove them. However, regulation 2441 already provides removal as an option to the owner. (Reg. 2441, subd. (e)(2).) Thus, "correct" must mean something else.

■ "Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof." (*County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].)

The American Heritage Dictionary defines "correct" as "[t]o remove the errors or mistakes from," "[t]o remove, remedy, or counteract (a malfunction, for example)," or "[t]o adjust so as to meet a standard or other required condition." (American Heritage Dict. (new college ed. 1981) p. 299.) Under these definitions, a display that is made unlawful or improper by the addition of illumination could be corrected by removal of the illumination. This would remedy or counteract the offending condition and return the display to the condition extant before the error or mistake arose.

Regulation 2441 gives the display owner the option to "[c]orrect the violation." (Reg. 2441, subd. (e)(1).) The violation in this instance is the addition of illumination. If the agency intended that the owner be required to bring the display into conformance with current law, one would expect the regulation to say something like "correct the display." It does not.

As for unequal treatment of owners of conforming and nonconforming displays, we find none. Both owners are treated the same in that both must eliminate the offending feature from their displays in order to "correct" them.

## V

### *When the Violation is Determined*

Pallco contends the trial court was required to consider the circumstances existing at the time their cross-complaint was filed rather than at the time of trial to determine if there was a violation of the Outdoor Advertising Act. Pallco argues that, once the displays were modified by adding illumination, no return to the status quo could remedy the situation. According to Pallco, the addition of illumination was a new placement of an advertising display requiring a new permit, and removal of the illumination was a further placement requiring yet another permit.

Business and Professions Code section 5350 reads: "No person shall place any advertising display within the areas affected by the provisions of this chapter in this state without first having secured a written permit from the director or from his authorized agent." Business and Professions Code section 5225 defines "to place" to include "the maintaining and the erecting, constructing, posting, painting, printing, tacking, nailing, gluing, sticking, carving or otherwise fastening, affixing or making visible any advertising display on or to the ground or any tree, bush, rock, fence, post, wall, building, structure or thing. It does not include any of the foregoing activities when performed incident to the change of an advertising message or customary maintenance of the advertising display."

 The foregoing definition of "to place" suggests the term is limited to acts associated with the establishment of a display by any means on virtually any type of medium and does not include acts associated with making an existing display more visible, either by raising, enlarging or illuminating it. However, California Code of Regulations, title 4, section 2270 defines "customary maintenance" as not including any of the following, "*all of which acts are considered as a 'placing' of a new advertising Display*": "(1) Raising the height of the Display from ground level. [¶] (2) Relocating all or a portion of a Display. [¶] (3) Adding a back-up Facing to a single Facing Display. [¶] (4) Increasing any dimension of a Facing . . . . [¶] (5) Turning the direction of a Facing. [¶] (6) Adding illumination or a Changeable message . . . with the exception of a light box." (Cal. Code Regs., tit. 4, § 2270, subd. (b), italics added.)

Accepting CalTrans's interpretation of "to place" to include the addition of illumination, it is nevertheless evident CalTrans interprets this definition not to encompass a change in a display that has been *corrected* after notice of a violation. Pallco's objection to relying on the circumstances existing at the time of trial rather than at the time the cross-complaint was filed is really just another way of challenging CalTrans's interpretation of the 30-day notice to allow for correction of the deficiency. Pallco argues that, once a change has been made, it cannot be unmade within the 30-day notice period. As explained previously, CalTrans rejects such an interpretation, and so do we.

Pallco argues allowing the Beams to correct their violation long after it occurs will encourage a "veritable cat and mouse game that could be played out by billboard operators: maintain the nuisance until one of the six or eight overworked CalTrans inspectors . . . catch them." Pallco argues: "Under the trial court's rationale, a wrongdoer [like the Beams] could erect illegal signs, get caught by any ordinary citizen or local entity then refuse to abate the nuisance by claiming the wrongdoer had not been cited by CalTrans and even if cited the wrongdoer has 30 days to correct. Or the wrongdoer could correct the violation just before trial and argue the case is moot because of the correction. The day after trial, of course, the illegality could reappear." (Fn. omitted.)

The short answer to this argument is that there is no evidence the Beams are attempting to play a cat-and-mouse game with CalTrans. The Beams were informed about possible violations, approached CalTrans about the matter, were eventually cited for a violation and corrected the situation. While perhaps the court could have enjoined the Beams from further violations of this type, this is not what Pallco was seeking in its lawsuit. Pallco sought removal of the displays. However, at the time of trial, there was no basis for such removal.

## VI

### *County Ordinance*

Pallco contends the Beams' displays violate Sacramento County ordinances and, on that basis alone, were subject to removal. Pallco argues "Chapter 120-01 of the Sacramento County Codes provides that nonconforming signs cannot be enlarged, expanded or extended" and "must be eliminated as soon as possible." Pallco argues the Act permits local governments to impose stricter requirements on outdoor advertising than those contained in the Act.

The Beams argue this issue was not pleaded or addressed at trial and therefore has been forfeited. This is not altogether true. Although the amended cross-complaint did not mention county ordinances, the acts that might violate those ordinances were nevertheless alleged. Pallco's trial brief argued a violation of county ordinances.

Nevertheless, Pallco's claim of a violation of Sacramento County ordinances fails on the merits. Pallco states county ordinances provide that displays legal before December 26, 1985, may be nonconforming thereafter and, if so, may not be modified. However, Pallco does not cite any evidence that the Beams' displays were modified after December 26, 1985. Even the illumination that existed by 1998 may have been added earlier. Carolyn Beam testified the displays were first illuminated in the 1970's. As for any enlargement, expansion or extension of the displays, Pallco failed to establish the size of the displays on December 26, 1985, or even at the time the Outdoor Advertising Act was amended. Although the permits for the displays listed smaller sizes, there is no evidence as to when the displays were enlarged. Evidence was presented regarding "log cards" that track the displays over time, including sizes, but the uncontradicted testimony was that the dimensions on those log cards may have been estimates taken by sight from the highway.

In order to support their claim that the Beams' displays violate county ordinances, Pallco was required to show those displays were nonconforming on December 26, 1985, and were materially modified thereafter. Pallco has satisfied neither requirement.

## VII

### *Abandonment*

Pallco contends common law requires removal of the Beams' displays, because the prior nonconforming use was voluntarily abandoned through

nonuse when the Beams added illumination. Pallco argues, once a nonconforming use has been abandoned, it cannot be restored. (See *Hill v. City of Manhattan Beach* (1971) 6 Cal.3d 279, 286 [98 Cal.Rptr. 785, 491 P.2d 369] ["reuse may be prohibited when a nonconforming use is voluntarily abandoned"].)

██ Abandonment of a nonconforming use involves both an intent to abandon and " 'an overt act, or failure to act, which carries the implication the owner does not claim or retain any interest in the right to the nonconforming use.' " (*Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 569 [48 Cal.Rptr.2d 778, 907 P.2d 1324].) Mere cessation of use alone is not enough, " 'although the duration of nonuse may be a factor in determining whether the nonconforming use has been abandoned.' " (*Ibid.*)

Pallco argues that as early as 1998, the Beams voluntarily abandoned their legal, nonconforming use in favor of an illegal use involving illumination. This illegal use continued for five years, after which the abandoned use could not be resumed.

We are not persuaded. The Beams never abandoned their legal, nonconforming use. Rather, they expanded that use by adding illumination. This is akin to an owner of a right-of-way easement increasing the traffic over the easement. The increase may be improper, but there was never an abandonment of the original use.

The cases cited by Pallco to support its argument are inapposite. They all involved either the discontinuance of a use altogether rather than a modification of that use or no use before the operation became nonconforming. (See *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 684 [117 Cal.Rptr.2d 269, 41 P.3d 87] (conc. & dis. opn. of Baxter, J.) [questioning whether the hotel had abandoned use of any rooms for tourist purposes]; *Hill v. City of Manhattan Beach, supra,* 6 Cal.3d at pp. 285–286 [a lot below the minimum size permitted by zoning may not be protected as nonconforming if the lot was never actually used]; *Stokes v. Board of Permit Appeals* (1997) 52 Cal.App.4th 1348, 1356 [61 Cal.Rptr.2d 181] [a public bathhouse intentionally closed for many years due to illegality could not be resumed as a nonconforming use]; *County of Sonoma v. Rex* (1991) 231 Cal.App.3d 1289, 1297 [282 Cal.Rptr. 796] [no use of the property as a nonconforming bed and breakfast before adoption of a zoning restriction].) Pallco cites nothing to support its novel theory that an expansion of a use is an abandonment of the original use.

VIII

*Lawfully Erected*

 As shall be discussed in the next part, Pallco contends the trial court erred in failing to determine whether the Beams' signs were "lawfully erected" within the meaning of the Outdoor Advertising Act. No advertising display that was "lawfully erected" may be compelled to be removed, either pursuant to the Act or any other law of any governmental entity, without just compensation. (Bus. & Prof. Code, § 5412.)

The Act defines "lawfully erected" displays as those "erected in compliance with state laws and local ordinances in effect at the time of their erection or which were subsequently brought into full compliance with state laws and local ordinances, *except that the term does not apply to any advertising display whose use is modified after erection in a manner which causes it to become illegal. . . .*" (Bus. & Prof. Code, § 5216.1, italics added.)

Pallco argues the Beams' signs were not "lawfully erected," because they had been modified to add illumination. Pallco argues the trial court ignored this fact and erroneously concluded that, because the illumination was removed after the Beams were cited by CalTrans, the displays remain legal. Pallco argues that, because this is not a CalTrans enforcement proceeding but a private action for nuisance, whether the Beams complied with CalTrans requirements is irrelevant. According to Pallco, once the displays were illuminated, they were no longer "lawfully erected" and constituted a nuisance, subject to removal by private action.

We disagree. Pallco does not explain how the status of the Beams' displays as either lawfully or unlawfully erected within the meaning of Business and Professions Code section 5216.1 bears on their claim that the displays constitute a public nuisance. However assuming a change in a display to make it no longer lawfully erected renders the display a nuisance, the trial court concluded that, at the time of trial, the displays were no longer illuminated and were otherwise in compliance with the Act. At that point, any nuisance that existed was eliminated.

Furthermore, it is not altogether clear the exception listed in Business and Professions Code section 5216.1 for a display that is "modified after erection in a manner which causes it to become illegal" would apply in this case, even if the illumination remained. Pallco does not allege, and did not present evidence, that the addition of illumination or any other change in the Beams'

displays made them "illegal." In other words, while the addition of illumination to a nonconforming display may not be permitted because it is an expansion of a nonconforming use, illumination may otherwise be legal under the Act.

At any rate, as explained previously, removal of the illumination within the time permitted by CalTrans eliminated any circumstance that would render the Beams' displays unlawfully erected.

## IX

### *Statement of Decision*

Pallco contends the trial court failed to rule on five issues identified in its request for statement decision. The five issues were identified as follows:

"1. Was Beam's illumination of the east and west facing signs a violation of the Outdoor Advertising Act and/or the Code of Regulations Section 2270 [*sic*]?

"2. At any point in time before Martha Ragas' letter, were the Beam signs lawfully erected as that term is used in the Outdoor Advertising Act?

"3. At the time the Cross-complaint was filed, were the Beam signs unlawfully erected as that term is used in the Outdoor Advertising Act?

"4. Was the legal nonconforming use of the Beam signs abandoned and/or terminated by nonuse when the Beams maintained illumination of their signs?

"5. Does the court construe Code of Regulations Section 2441 as allowing the owner of a nonconforming sign 30 days to correct a violation of the Outdoor Advertising Act without obtaining a new permit?"

The trial court failed to answer these questions expressly. It stated: "The Court notes that cross-complainant has identified five 'principal controverted issues.' The Court recognizes that cross-complainant spent a great deal of time discussing the identified issues. This does not, however[,] require the Court to rule on the specifics of each evidentiary issue so identified. The Court is not required to make minute findings as to individual items of evidence. [Citation.] [¶] The Court has set forth the ultimate facts pertaining to each principal controverted issue. The Court has determined that the signs are lawful. The Court reiterates that it does not substitute its independent

judgment on facts or policy that are properly decided by Caltrans. The Court has addressed the issues identified by cross-complainant as necessary for its decision."

■ As the trial court indicated, it addressed the issues identified by Pallco only to the extent necessary for its decision. A trial court is not required to include in a statement of decision findings on immaterial issues, i.e., those not pertinent to the court's ultimate determinations. (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 [8 Cal.Rptr.2d 293]; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599 [207 Cal.Rptr. 728].) And even when it fails to make required findings, "if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings." (*Hellman v. La Cumbre Golf & Country Club, supra*, 6 Cal.App.4th at p. 1230.)

Because the trial court concluded the removal of illumination within 30 days of notice from CalTrans brought the Beams' displays back into compliance with the Act, it was unnecessary to resolve Pallco's first question—whether illumination of the displays violated the Act. It was also unnecessary to answer the second and third questions. To the extent the displays were "lawfully erected" before the addition of illumination, they remained so after the illumination was removed, regardless of their status in the interim.

The trial court should have answered Pallco's fourth question—whether the legal nonconforming use was abandoned when illumination was added. However, as discussed previously, there is no evidence of an abandonment and, therefore, the omission is harmless.

Finally, as to the fifth question—whether regulation 2441 permits a 30-day correction period, the trial court obviously answered this question in the affirmative. The court expressly deferred to CalTrans on this issue, and CalTrans's regulation provides such a correction period. Furthermore, the question presented is one of law, which we review de novo in any event. A statement of decision is required to resolve all material issues of fact, not law.

X

*Pallco's Protected Interest*

Pallco contends the trial court erred in concluding Pallco had no protected interest in the Tuohy property that would entitle it to obtain injunctive relief. In light of our determination on the other issues raised, it is unnecessary to

resolve this issue. Whether or not Pallco had a protected interest, it was not entitled to the relief sought.

XI

*Prevailing Party*

In its reply brief, Pallco contends the trial court erred in finding the Beams to be the prevailing party for purposes of an award of costs. Pallco argues it prevailed, at least in part, by forcing the Beams to remove the illumination on their displays.

■ We will not normally consider arguments raised for the first time in a reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647–648.) In any event, Pallco's argument is without merit.

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. *When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court* . . . ." (Code Civ. Proc., § 1032, subd. (a)(4), italics added.)

According to Pallco, it obtained other than monetary relief by forcing the Beams to remove illumination from their displays. However, all this accomplishes for Pallco is to make the question of who was the prevailing party one for the trial court. Although the Beams may have been forced to remove the illumination, this was not the remedy sought by Pallco. Pallco's primary objective was to obtain removal of the Beams' displays altogether. This it failed to do. Rather, the Beams were able to fend off Pallco's many theories as to why the court was required to order removal of the displays as a nuisance. Under these circumstances, the trial court did not abuse its discretion in concluding the Beams were the prevailing party under Code of Civil Procedure section 1032.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 27(a).)

Raye, Acting P. J., and Cantil-Sakauye, J., concurred.