Filed 5/2/16  Livacich v. Livacich CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LORRAINE LIVACICH,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>          v.<br><br>LORI ANN LIVACICH et al.,<br><br>    Defendants, Cross-complainants and Respondents. | G050694<br><br>(Super. Ct. No. 30-2013-00637272)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Law Offices of Randall S. Waier and Randall S. Waier for Plaintiff, Cross-defendant and Appellant.

Nethery/Mueller/Olivier, D. Martin Nethery, Martin A. Mueller and Jacqueline E. Bailey for Defendants, Cross-complainants and Respondents.

\*          \*          \*

This is one of numerous cases filed after the death of John Livacich (John), who died in 2007, while his divorce with Lorraine Livacich (Lorraine)[1] was pending.[2]  In this particular chapter of this epic saga, Lorraine sued John's daughters, Lori Ann Livacich (Lori) and Cathy Catsouras (Cathy) (collectively the daughters), regarding the transfer of John's ownership interest in two partnerships to them.  The trial court ultimately decided the properties belonged to the daughters.  Lorraine now appeals, arguing the judgment should be reversed because the trial court failed to resolve a key issue, specifically, whether the estate is the owner of the partnership interests, and whether the trial court exceeded its power by awarding the partnership shares to the daughters.  We conclude these arguments are completely lacking in merit and therefore affirm the judgment.

I

FACTS

Sometime prior to November 1987, John purchased a 1/12 ownership interest in two partnerships known as Vista Palmilla and Faro Associates (the partnerships).  Each partnership owned one residence near Cabo San Lucas, Mexico.

John and Lorraine were married on November 27, 1987.Lorraine's son, Wade Mezey (Wade), lived with them.  John also had two daughters from a prior marriage, Lori and Cathy.

---

[1]Throughout this opinion, we refer to the parties by their first names.  This is done for the ease of the reader.  No disrespect is intended.  (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

[2] See *Aurora National Life Assurance Company v. Livacich* (Oct. 24, 2011, G043425) [nonpub. opn.].  In one of many lengthy and unnecessarily distracting footnotes in her opening brief, Lorraine requests we take judicial notice of this opinion, but does not meet any of the procedural requirements for such a request, which is denied.  (Cal. Rules of Court, rule 8.252(a).)

On February 1, 1996, Lorraine filed a divorce petition. The family court issued temporary restraining orders restricting the parties' ability to sell or transfer property, community or separate. After the separation, Lorraine continued to use the Mexico properties for about half of the allotted time for the next five or six years. In April 1997, John transferred his ownership interest in the partnerships to his daughters.

John died on May 1, 2007. The divorce proceedings were not final as of that date. Probate proceedings were initiated in San Bernardino County (the probate proceedings). John had a trust known as the John R. Livacich Family Trust (the trust), established in 2005, which was amended in 2007.[3] Upon his death, the trust specified the entire trust estate was to be distributed to his daughters in equal shares. He also had a will, executed three days before his death, which named his daughters as the residuary beneficiaries.[4]

In August 2009, Lorraine filed a petition under Probate Code section 850,[5] purportedly to establish the estate's claim to certain property. The property listed in the petition included stock, goodwill and other assets related to John's produce business. Lorraine apparently acknowledges that the partnerships were not specifically mentioned in this petition. She claims they were referred to "*albeit obliquely*" in a catch-all clause that requested an order directing Lori and Cathy, as well as numerous other persons and entities, to transfer any "property of the estate" to the estate.

---

[3] The introductory section of the trust stated: "I am no longer married. I was formerly married to . . . Lorraine . . . and [she is not] a settlor, trustor or a trustee under this Declaration of Trust. I last physically lived with Lorraine. . . in 1994, we were separated in 1995, and she filed a dissolution of marriage action in 1996. For more than 10 years she has lived and cohabitated with another man."

[4] Lorraine also filed a will contest and attempted to have a 1991 will probated.

[5] All further statutory references are to the Probate Code.

In July 2011, Jane B. Lorenz, the estate's special administrator, filed a petition for instructions from the probate court. The application referred to a status report Lorraine had filed requesting the estate take steps to recover the partnership interests, and asked for instructions. Lorraine had asserted the position that the transfer of the partnerships violated the family court's temporary orders. The daughters argued the estate had no claim because the partnerships were John's separate property in any event, and therefore Lorraine had not been harmed by any violation of the temporary orders. In an opposition, the daughters essentially reiterated this position. Lorraine filed a response stating she was seeking to recover the property for the estate, and again pointed out the violation of the family court's temporary orders.

In response, the court issued an order stating Lorenz was to act as a neutral third party and was not "to be actively involved in marshalling the assets of the Estate not presently in the name of the decedent or the estate unless such assets are turned over to the Special Administrator for her management or control."

Several months later, at a hearing addressing numerous estate matters, the partnerships were addressed by the probate court. The probate court stated Lorenz should not be involved in that issue, and Lorraine could bring a separate civil action if she so wished. The probate court's written order confirmed this, and stated "any claims raised by Lorraine. . . concerning said properties and by the said [section] 850 petition are assigned to . . . Lorraine . . . and she may pursue her said claims as to the . . . Mexico properties (California partnerships) by separate civil action(s)."

Lorraine filed a complaint on March 15, 2013 for damages and declaratory relief, naming only the partnerships. The complaint sought to enjoin any further encumbrance or transfer of partnership assets while the case was pending, to void the 1997 transfer by John to his daughters, to declare and reinstate Lorraine as the owner, and for damages for aiding and abetting and conversion. The complaint alleged the assets

4

were community property purchased during the marriage, and John's subsequent transfer of them was in violation of the family court's temporary orders. She also claimed the partnerships were, at the time of the transfer, owned by both herself and Wade in equal shares.

Lori and Cathy, who were not named in the complaint, moved to intervene. The court granted the motion, and they filed a cross-complaint for declaratory relief against Lorraine. The cross-complaint alleged the partnerships were John's separate property, and sought a declaration they belonged to the daughters. They sought no damages.

The partnerships themselves, although named as defendants, did not enter an appearance. They entered onto a stipulation with Lorraine to obey any court order with respect to ownership of the partnership assets, provided no damages were awarded against them. Lorraine, accordingly, did not pursue her claims for conversion or aiding and abetting.

Pursuant to another stipulation, Wade was added as a defendant by Doe amendment to the cross-complaint. Wade filed an answer.

At the bench trial, Lorraine and Wade contended that John had gifted each of them a one-third interest in the partnerships. Lorraine abandoned her contention that the partnerships were purchased during the marriage, stipulating that John purchased them prior to their marriage. Lorraine also did not contend that the use of any community assets created a community property interest. Lorraine and Wade also argued that John's transfer of the partnerships to the daughters should be voided because it violated the family court's temporary orders, and that if the partnerships were part of the estate, their value would be available to her to satisfy unpaid spousal support and other debts.

5

The daughters argued that John did not gift any interest in the partnerships to either Wade or Lorraine, and any gift was invalid. They also argued equitable considerations weighed against voiding the transfers.

The parties also contested the meaning of the probate court's order. Lorraine argued the order assigned any interest John's estate might have to her, and any recovery was hers alone. Lori and Cathy argued the order simply permitted Lorraine to establish any right to the partnerships in a non-probate proceeding.

After the bench trial and posttrialmotions, the court issued a final statement of decision. The court concluded Lorraine had received an assignment of any interest by the estate pursuant to the probate court's order. The trial court also held the evidence did not support Lorraine and Wade's contention that the partnerships were a gift to them. Additionally, while the violation of the family court's temporary orders rendered the transfer voidable, Lorraine was merely a creditor and not an aggrieved spouse, and the equities weighed in favor of affirming the daughter's ownership interests. The court entered judgment stating the partnerships shall remain owned by Lori and Cathy, Lorraine and Wade have no ownership interest, and the partnerships themselves shall act consistently with the court's ruling.

## II

## DISCUSSION

While the facts and history of this dispute are complex, the legal issues Lorraine purports to raise on appeal are not. In fact, they border on the absurd and provide absolutely no grounds for reversal.

### A. *Adjudication of Controverted Issues*

The trial court, in a statement of decision, is required to explain the factual or legal basis for its "decision regarding the principal controverted issues at trial."

6

(*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.) Lorraine's first argument is that the trial court failed to resolve the issue of whether the *estate* is the owner of the partnership shares.

This issue was not only resolved by the trial court, it was resolved in the manner Lorraine repeatedly sought at trial. Lorraine's complaint requested the return of the partnerships from the daughters "back to his widow as her community property." Her prayer for relief sought a declaration that the transfer of the partnershipswere void and "are to be restored . . . to . . . Lorraine. . . in her name alone." Asked to brief this very issue during trial, Lorraine's entire brief asserts the estate's claims were assigned to her. The "estate has assigned its rights regarding the . . . partnerships to . . . Lorraine. Any interest that the estate would have been assigned by the trial court in the instant case should therefore be awarded to [Lorraine]."

The argument that the partnerships belong to Lorraine, not the estate, was also made by counsel at numerous points. "Our position is the claim was assigned to her through the estate's fruition." When asked specifically by the court if Lorraine was representing her own interests or the interests of the estate, counsel answered:"She is here on her own behalf, because the estate has given up the right . . . ." These are not the only examples of similar statements at trial. Any argument now that she sought a ruling from the trial court about the estate's rights rather than her own is completely and utterly at odds with her position at trial.

Lorraine changed her argument after the trial court issued its proposed statement of decision, proposing, for the first time, that the partnerships be awarded to the estate. She also sought clarification on the issue. The trial court clarified in its final statement of decision:"[T]his court finds that the Probate Court assignment to Lorraine amounts to a ceding of its rights and interests in the two partnerships." Thus, any question about whether the trial court failed to "resolve" this issue does not exist. It was

7

specifically and unambiguously decided by the trial court.

Although it has nothing to do with whether the trial court did or did not rule on the issue, she also argues: "The trial court was charged by the . . . probate court order to do no more than determine this claim in Lorraine's [section] 850 petition and order the two daughters to convey their wrongfully acquired shares to the special administrator of the estate."

There is so much wrong with this sentence that it is difficult to know where to begin. First, the probate court in one county cannot "charge[]" a civil court in another county to do anything. It has no authority to do so. The probate court exercises its own general jurisdiction (§ 800), and if it felt the estate should be involved in this dispute, it would have ruled on the pertinent issues itself or directed the special representative to become involved. Second, the probate court most certainly did not give the trial court, a coequal court of general jurisdiction, any specific direction about what to find, nor could it possibly have done so. Third, the section 850 petition was not before the trial court, and we completely reject Lorraine's attempt to turn this case into a hearing on that petition, which, we note, was functionally *denied* by the probate court with respect to the partnerships. The only thing the trial court could adjudicate here was the complaint and the cross-complaint, neither of which had anything to do with section 850.

In sum, this issue was resolved by the trial court. Lorraine's claims to the contrary are, simply put, nonsense.

## B. *Scope of the Court's Authority*

This is essentially a re-argument of Lorraine's assertion that the probate court was entitled to order the trial court how to conduct its business. She claims that "the probate court, by its order, only allowed a separate civil action to try the special administrators right to recover the partnership shares to be administered through

8

probate." That is not what the order said, but in any event, we need not belabor the point. This was not a petition under section 850. It was not pleaded that way, it was not argued that way, and it cannot be asserted, for the first time on appeal, that it should have been treated that way.

The court was not, as Lorraine argues, "sitting in probate." The probate court could not "authorize[]" the trial court to do certain things and prohibit it from doing others. The probate court cannot "reference[]" its "jurisdiction and power" to a trial court in another county. This entire argument is based on a faulty premise. The trial court and the probate court are equal courts of general jurisdiction, and neither has the power to confer or restrict the other's authority.

Moreover, it was Lorraine who took the position throughout trial that she, not the estate, was entitled to the partnerships. She simply cannot argue a contrary position on appeal, whether under the doctrine of invited error or the prohibition against changing theories on appeal. (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000; *Brown v. Boren* (1999) 74 Cal.App.4th 1303.)[6]

---

[6] We have discretion to consider purely legal issues based on undisputed facts for the first time on appeal. But where, as here, the issue was known to both parties, and is only being raised in a bald-faced and self-serving attempt to snatch some measure of victory from what would otherwise be an obvious defeat, doing so would be improper and unfair to the other party.

III

DISPOSITION

The judgment is affirmed. Lori and Cathy are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.